\* STATE v. OBER.

The prohibition of the constitution of the State against compelling a subject to accuse or furnish evidence against himself (Bill of Rights, art. XV) may be waived by him, and is waived by his consenting to be a witness in his own behalf, under the act of 1869, in relation to respondents' testifying in criminal cases (ch. 23, Laws of 1869), and he thereby subjects himself to the rules and tests applicable to other witnesses.

INDICTMENT, found at the April term, 1873, against Everett I. Ober, for keeping spirituous liquor for sale.   The defendant being produced

---

\* Decided at the August (adjourned) term, Aug. 15, 1873.
REPORTER.

and sworn in his own behalf, testified in chief substantially as follows : First. That he had never seen or known anything of the existence of a certain bottle of spirituous liquor found upon his premises on March 26th, by virtue of proceedings under a search-warrant, until the same had been so discovered. Second. That he had never sold any spirituous liquor to one Mrs. Cofran, a witness for the State, and that one Hirsch had never been in his employ,—all of which said several matters had been put in evidence by the State, and were material. Third. That he had never sold spirituous liquors to any female. Fourth. That he had not kept for sale or sold to any person any spirituous liquors since he was notified by a committee of citizens, six or seven weeks before the date of the indictment.

Whereupon the State, on cross-examination, asked him if he had not sold spirituous liquors within one year previous to the finding of the indictment. But the defendant being advised of his privilege that he might decline to answer if his answer might tend to criminate him, thereupon so declined to answer. After some further immaterial proceedings, and the argument of the defendant's counsel, the counsel for the State proceeded to make the closing argument, wherein he proposed to say to the jury that they should consider his declination to answer, as aforesaid, a pertinent matter of evidence to be taken against him. Whereupon the defendant's counsel raised the objection that he had no lawful right thus to argue, nor had the jury a lawful right to take such matter into consideration,—but the court overruled the defendant's objection, and allowed the counsel for the State thus to argue ; and the court, in the charge to the jury, expressly instructed them that they might consider such declination to answer, and give it such weight as they thought it entitled to on the question of his guilt or innocence of the offence alleged against him ; to which ruling and instruction the defendant excepted.

The jury returned a verdict of guilty, and after sentence the defendant filed the foregoing bill of exceptions, which was allowed.

*Hawthorne & Greene,* for the respondent.

I. The case shows the very point in issue : Is it competent for the State to argue that the declination of the respondent to answer, under the circumstances set forth in the bill, was a pertinent matter of evidence to be taken against him ; and was it further competent for the court to charge as stated ? We say not ; because, first, section 2, chapter 22, statute of 1869, provided that the counsel for the prosecution cannot comment upon the respondent's refusal to testify in any action where he may be defendant, although by section 1 of said act he is declared to be a competent witness, if he so elects. The principle in mathematics, that the greater includes the less, is applicable in this case.

II. There is nothing in the act, nor in the circumstances of the case, nor in any principle of law that we know, which places a respondent

as witness in any different condition, or under greater disabilities, than an ordinary witness; and, at common law, a witness declining to testify for the same reason that the respondent did in this action,—that is, that his answer might tend to criminate him,—did not allow an inference to be drawn against him.   1 Greenl. Ev., sec. 451, and cases cited in note 5; 12th ed. Redfield's Annotations, p. 500, or p. 624; 11th ed., sec. 451, note 3, and cases hereafter referred to.   Upon the question of the *privilege* of witnesses generally, see *ibid*, sec. 451, note 5, p. 498 of Redfield's ed. ; also, *ibid*, note 6, and cases cited.

III. All witnesses had such privilege *(ibid*, and authorities in note 1) ; and the court, upon the question raised, decided that the respondent was entitled to the privilege.

This being conceded, the rest follows, and the general rule applies in favor of the respondent.   It would be a strange proceeding if the court, having decided that the witness had the privilege, and therefore could not be compelled to answer by process for contempt, should, almost in the next breath, seek to achieve the same result by the substantial infliction of a new and unusual punishment ; for it is difficult to see any difference in the result reached, whether the witness was compelled to testify to his own guilt, or whether the court should charge the jury that his declination might be taken as evidence of it.

IV. It is a well settled principle of criminal law, that every person shall be presumed to be innocent until legally proved to be guilty ; and the constitution of the State, art. 15, part 1, says that no subject shall be compelled to accuse or furnish evidence against himself; and it would seem that the legislature could not have intended, in declaring that the respondent might be a competent witness upon his own election, and, in such regard, like any other witness, and that by a forced construction of the law he could only exercise the right, unless he did so fully, even to a confession of guilt, except upon the practical surrender of his constitutional safeguard, and overriding the presumption of innocence above referred to.

V. There is nothing in the point, that may be suggested to the court by the State, that the respondent, having voluntarily answered, in chief, questions tending to criminate him, was therefore bound to answer fully—3 Starkie Ev. 1741, *note t*—because he made no such answers. 2. We hold that the legislature not only intended to place any respondent on equal terms with any other witness, but, beside, that he should be protected against comment by reason of any declination to answer.

VI. Another authority in support of the doctrine in part 5 of this brief, and which goes far beyond it, is found in Phillipps Ev., Cowen & Hill's notes, title Privilege of Witnesses, where it is stated as the practice of Lord TENTERDEN, and subsequently followed by the courts of Vermont and elsewhere, that even where a witness had testified in respect to matters tending to criminate him, and declined further to answer, he was entitled to his privilege, but that his previous testimony should be stricken out.   We hold this to be more in accordance with

the spirit of the rule in question, and the better law, and are clearly of opinion that it should become the settled practice in this State.

VII. Since our oral argument of the case, and upon full reflection, we remain of the opinion that a point then urged was well taken,— that is, that the legislature, in declaring any respondent to be a competent witness, at his election, and without other qualification or limitation, necessarily affixed to a respondent, electing to testify, all the incidents, qualities, advantages, and disabilities which attached to any witness. In other words, being declared to be a witness at his election, if he became such he must be governed by the law applicable to witnesses; and that law, in the two principal features pertinent to this branch of the case, is, first, that a witness may decline to testify as before stated; and, second, that no inference inimical to such a witness shall be drawn by reason of such declination to answer. The authorities to these two propositions have already been referred to under section 2 of this brief. We have carefully examined them, and herewith enclose a succinct statement of them.

VIII. Some reference was made by the court to a case reported in Mass. 107. We have examined that and the other Massachusetts cases,—viz., 13 Allen 563, 97 Mass. 545, *ibid* 587, 99 Mass. 420,—and do not see that they go legitimately any further than the doctrine of 3 Starkie Ev. 1741; and whether they do or not is not material, because the question in this case is in respect to a matter of *inference from a declination*, and not whether a respondent witness, having testified in part voluntarily, thereby waives his constitutional privilege, and must testify fully. Certainly the Massachusetts cases are none of them considered upon principle or authority, and the broad declarations therein made are warranted neither by the questions raised, nor by any precedents.

*Flint*, solicitor, for the State.

The conduct of the respondent in refusing to testify, after he had taken the oath, when directly interrogated upon a matter vitally important to himself and to the issue on trial, and for the reason that his answer would criminate himself before the faces of the jury, was a matter of the utmost significance, and should have great weight with the jury. It was competent to be considered as an admission, by conduct and demeanor. *Cook* v. *Brown*, 34 N. H. 463; *Chamberlain* v. *Davis*, 33 N. H. 121; *Hoitt* v. *Moulton*, 21 N. H. 586; *Pittsfield* v. *Barnstead*, 40 N. H. 478; *Rich* v. *Eldredge*, 42 N. H. 153, 157; *Woodman* v. *Jones*, 8 N. H. 344, 346; *Corser* v. *Paul*, 41 N. H. 24.

FOSTER, J. The questions are presented, whether a prisoner, who is sworn as a witness at his own request, can be compelled to answer questions, upon his cross-examination, as to facts tending to convict him, in relation to which he was not interrogated on his direct examination; and whether, upon being permitted to refuse to answer such

questions, upon the ground that his answers might tend to criminate him, such refusals may be commented upon by the State's counsel, and be considered by the jury.

If the ruling that the prisoner had the right to decline answering had been correct, we should agree with his counsel that the subsequent ruling could not be sustained. But the first ruling was not correct. The respondent, by electing to testify in his own favor, waived his constitutional privilege. If he refuses to testify at all, the statute protects him from adverse comment or inference; but, if he avails himself of the statute, he waives the constitutional protection in his favor, and subjects himself to the peril of being examined as to any and every matter pertinent to the issue. This is expressly held in *Com.* v. *Mullen,* 97 Mass. 545, *Com.* v. *Bonner, ibid* 587, *Com.* v. *Morgan,* 107 Mass. 199, *McGarry* v. *The People,* 2 Lansing 227, and *Connors* v. *The People,* 50 N. Y. 240, decided in November, 1872, in which CHURCH, C. J., delivering the opinion of the court of appeals, declares the principle controlling the case to be, that, by consenting to be a witness in his own behalf, under the statute, the accused subjected himself to the same rules, and was called upon to submit to the same tests, which could by law be applied to the other witnesses; in other words, if he availed himself of the privilege of the act, he assumed the burdens necessarily incident to the position. The prohibition in the constitution is against compelling an accused person to become a witness against himself. If he consents to become a witness in the case voluntarily, and without any compulsion, it would seem to follow that he occupies, for the time being, the position of a witness, with all its rights and privileges, and subject to all its duties and obligations. If he gives evidence which bears against himself, it results from his voluntary act of becoming a witness, and not from compulsion. His own act is the primary cause, and if that was voluntary, he has no reason to complain.

If the respondent had not seen fit to make himself a witness in his own cause, the fact that he did not choose to testify could not have been commented upon by the State's counsel, nor would the jury have been at liberty to draw any inference detrimental to him from his silence. But, when he made himself a witness-in-chief, he subjected himself to the government's right of cross-examination.

By electing to testify, he placed himself in the attitude of any ordinary witness, irrespective of any interest in the cause. As a party, his denial to answer a particular question, on the ground that such answer would tend to criminate him, could afford him no exemption from the inferences which would naturally attach to any other witness, not a party, in such circumstances. *Norfolk* v. *Gaylord,* 28 Conn. 309.

The fact that he is charged with a crime gives him certain special privileges. Among these are the requirement of the State to prove the charge against him beyond a reasonable doubt; the constitutional prohibition of compelling him to accuse or furnish evidence against himself; the right to meet the witnesses against him face to face, and so forth.

With such exceptional advantages, he stands precisely like a party to a civil cause electing to testify in his own favor, and thereby subjecting himself to the ordinary ordeal of cross-examination, and comment upon his testimony and his demeanor upon the stand.

In the present case, the government might well ask for a conviction upon proof not merely that he had knowledge concerning the liquor found on his premises on March 26, or that he had sold liquor to Mrs. Cofran, or that Hirsch had ever been in his employment, or that he had ever sold liquors to a female, or that he had sold to anybody since he had been notified by a committee of citizens, six or seven weeks before the date of the indictment; but also upon proof that he had sold spirituous liquor at any time, and to any person, within one year previous to the finding of the indictment. Gen. Stats., ch. 99, sec. 27. Indeed, the only material question for the jury was, whether he had kept for sale spirituous liquors at any time within the year, in violation of section 13 of the chapter.

His object in taking the witness stand was, to show himself innocent of this offence by testifying that he had not kept liquor for sale within the year; and putting himself in such a position, and declining to testify except to such matters as would tend to exculpate himself, refusing to answer the most direct, competent, and material inquiry raised by the case, was a matter of great significance, which it was the right, if not the duty, of the State's counsel and of the court to bring prominently to the attention of the jury. See *Andrews* v. *Frye*, 104 Mass. 234.

It is undoubtedly a general proposition and a wholesome rule, that, if a witness declines answering a question on the ground that his answer will tend to criminate him, no inference of the truth of the fact is permitted to be drawn from that circumstance. 1 Greenl. Ev., sec. 451.

And the statute of 1869—1 Sess. Laws, ch. 23—allowing respondents to testify, and providing that no inference of guilt shall be drawn from their neglect to testify, is but an affirmance of this proposition. But it is also very clearly settled, that, in all cases where the witness, being advertised of his privilege to decline to answer, chooses not to avail himself of the privilege, but elects to answer the particular inquiry which he might have avoided, he is bound to answer every material question relating to the transaction. 1 Greenl Ev., sec. 451; *The State* v. *K*——, 4 N. H. 562; *Coburn* v. *Odell*, 30 N. H. 554, 555; 2 C. & H. notes to Phil. Ev. 736, 737.

The respondent was not bound to volunteer any statement concerning the matter of the charge against him, nor could he be compelled to disclose any fact or answer any question which would expose him to another criminal prosecution, or tend to convict him in this. Such immunity from confession, examination, argument, or prejudicial inference, was his undoubted privilege; but he chose to waive it, and insisted upon his right to testify; and, having testified concerning a part of the transaction, in which it was alleged that he was criminally

concerned, without claiming his constitutional privilege, it was too late for him to halt at that point which suited his own convenience. It is clear, upon reason and authority, that he might have been compelled to answer the question propounded by the State's counsel. It was material to the issue, if not directly involved in his own proffered testimony. At this point, for obvious reasons, he saw fit to close his lips, and the court allowed him to remain silent. Of this mistaken clemency he cannot now be heard to complain.

The whole argument of his counsel now proceeds upon the erroneous assumption that the ruling of the court was right. That assumption being groundless, his argument fails.

The views of so eminent a man as Judge COOLEY seem to be adverse to those now expressed. He inclines to the opinion that a party accused of crime should be and is entitled, under statute of Michigan allowing the accused to give evidence in his own behalf, to disclose no more than he chooses—(" if he does testify, he is at liberty to stop at any point he chooses, and it must be left to the jury to give a statement, which he declines to make a full one, such weight as, under the circumstances, they think it entitled to ; otherwise the statute must have set aside and overruled the constitutional maxim which protects an accused party against being compelled to testify against himself ; and the statutory privilege becomes a snare and a danger.") Cooley's Const. Lim. 317 ; * also p. 182.

---

* Judge COOLEY sends me the following copy of a note to be inserted on page 317 of the forthcoming third edition of his work on " Constitutional Limitations."

" By a recent case, this paragraph appears to have led to some misapprehension of our views, and consequently we must regard it as unfortunately worded. Nevertheless, after full consideration, it has been concluded to leave it as it stands.

" What we intend to affirm by it is, that the privilege to testify in his own behalf is one the accused may waive without justly subjecting himself to unfavorable comments ; and that, if he avails himself of it, and stops short of a full disclosure, no compulsory process can be made use of to compel him to testify further. It was not designed to be understood that, in the latter case, his failure to answer any proper question would not be the subject of comment and criticism by counsel, but, on the contrary, it was supposed that this was implied in the remark, that ' it must be left to the jury to give a statement, which he declines to make a full one, such weight as, under the circumstances, they think it entitled to.' All circumstances which it is proper for the jury to consider, it is proper for counsel to comment upon.

" The case referred to is that of *State* v. *Ober*, just decided in the supreme court of New Hampshire. The defendant was put on trial for an illegal

The learned jurist does not furnish us with cases in support of his views, which, after such consideration of them as the great ability and learning of Judge COOLEY compel, we cannot regard as being supported by authority or sound reason.   But the statute of Michigan is peculiar. By its provisions the accused is allowed to make a statement to the court or jury, and may be cross-examined on any such statement.   It has been held, says Judge COOLEY, that this statement should not be under oath.

In speaking of this statute . and of the right given to cross-examine the party who has made his statement, Judge CAMPBELL says,—" And . while his constitutional right of declining to answer questions cannot be removed, yet a refusal to answer any fair question, not going outside of what he has offered to explain, would have its proper weight with the jury."   *People* v. *Thomas*, 9 Mich. 321.

Upon the whole, we are unable to reach any other conclusion than that the respondent's testimony, so far as it went,—and not less the fact that it went no further—his refusal to submit to a full cross-examination, within proper limits, after waiving his constitutional privilege, and all his conduct and demeanor, were proper matters for comment by counsel and court, as well as for the consideration of the jury.   The exceptions are, therefore,                              *Overruled.*

---

sale of liquors, and, having offered himself as a witness, was asked, on cross-examination, a question directly relating to the sale. He declined to answer, on the ground *that it might tend to criminate him.*   Being convicted, it was alleged for error that the court suffered the prosecuting officer to comment on this refusal to the jury.   The supreme court held this no error.   We not only approve of this ruling, but we should be at a loss for reasons which could furnish plausible support for any other.   It is in entire accord with the practice which has prevailed without question in Michigan, and which has always assumed that the right of comment, where the party makes himself his own witness and then refuses to answer proper questions, was as clear as the right to exemption from unfavorable comment when he abstains from asserting his statutory privilege.

"The case of *Connors* v. *People*, 50 N. Y. 240, is different.   There, the defendant, having taken the stand as a witness, objected to answer a question, but was directed by the court to do so, and obeyed the direction. This was held no error, because he had waived his privilege.   If the defendant had persisted in refusing, we are not advised what action the court would have deemed it proper to take, and it is easy to conceive of serious embarrassments in such a case.   Under the Michigan practice, when the court has decided the question to be a proper one, it would have been left to the defendant to answer or not at his option; but if he failed to answer what seemed to the jury a proper inquiry, it would be thought surprising if they gave his imperfect statement much credence."

                                                              REPORTER.