OPINION OF THE COURT
Harold J. Rothwax, J.
The defendant is charged with the crime of murder in the second degree (Penal Law, § 125.25). During the course of pretrial discussions, the defendant’s attorney advised the prosecutor and the court, though he was not obliged to do so, that the defendant intended, on the trial of the case, to rely on the affirmative defense that the defendant acted under the influ *292 ence of extreme emotional disturbance (Penal Law, § 125.25, subd 1, par [a]). The defendant’s attorney further advised that, in order carry the burden which such a defense imposes (see Penal Law, § 25.00, subd 2), at least three, and possibly as many as six, psychiatrists would be called to testify on the defendant’s behalf.
The prosecutor has now moved this court to direct the defendant to submit to examination by psychiatrists and/or psychologists to be engaged by the District Attorney. He also moves for ancillary relief, seeking the reports of the defense psychiatrists on whom the defendant will rely at the time of trial. The defense does not oppose the granting of this ancillary relief; indeed, the defense attorney urges that much of the material has already been provided and that the remainder will be provided shortly. The defendant further contends that the fact that these reports have been provided obviates the need for the defendant to submit to an examination to be conducted by a psychiatrist chosen by the prosecutor.
Apart from this contention, the defense opposes the prosecutor’s motion on the following grounds: (1) The defense was not required by statute or decisional law to give notice that it intended to rely on the affirmative defense of extreme emotional disturbance; (2) That the cases relied upon by the People in support of their claim (People v Patterson, 39 NY2d 288; People v Blanks, NYLJ, Sept. 14, 1977, p 11, col 6), either are not relevant to this issue (Patterson) or are wrongly decided and not controlling (Blanks); (3) That the People may not properly rely on an analogy to the insanity defense (Penal Law, § 30.05; see Matter of Lee v County Ct. of Erie County, 27 NY2d 432), because (a) such a defense requires the defendant to give notice to the People, which is not required of the defendant in this situation; and (b) the insanity defense requires the People to disprove the defense beyond a reasonable doubt, whereas the affirmative defense asserted here imposes no additional burden on the People; and (4) That granting the relief requested would infringe upon the defendant’s right to remain silent and his privilege against self incrimination.
I will deal with these contentions seriatim.
Although it is clear that the defendant was not required to give notice of his intent, he has, in fact, given such notice and he continues in his determination to rely on psychiatric testimony in support of the affirmative defense. The defendant is, of course, free to change his mind and were he to do so, *293 either by relinquishing reliance on his psychiatrists or indicating that he would not employ the affirmative defense here in issue, the prosecutor would be unable to seek the examination or, if it had already been obtained, utilize it.
Statutes which require notice of alibi (CPL 250.20) or insanity (CPL 250.10) have been sustained as constitutionally valid (Williams v Florida, 399 US 78; Wardius v Oregon, 412 US 470). They further the search for truth, reduce the role of surprise, and enhance the fairness of the adversary system. Such statutes only compel a defendant to accelerate the timing of his disclosure; they in no way dictate his choice of defense. As the United States Supreme Court held in Williams v Florida (supra, at pp 85-86): "Nothing in the Fifth Amendment privilege entitles a defendant as a matter of constitutional right to await the end of the State’s case before announcing the nature of his defense, any more than it entitles him to await the jury’s verdict on the State’s case-in-chief before deciding whether or not to take the stand himself * * * We decline to hold that the privilege against compulsory self-incrimination guarantees the defendant the right to surprise the State with an alibi defense.”
In some jurisdictions, the defendant must also furnish the prosecuting attorney with notice of other defenses (see, i.e., Arizona Rules of Criminal Procedure, rule 15.2, subd b, which requires the defendant to notify the prosecutor of all defenses as to which he will introduce evidence at trial, including, but not limited to, alibi, insanity, self-defense, entrapment, impotency, marriage, insufficiency of a prior conviction, mistaken identity, and good character).
It is undoubtedly the case that notice was here volunteered because it was the fair thing to do. Since the notice has been given and since it is reliable and since it remains in effect, there is no good reason in law or logic why the prosecutor and the court may not rely upon it.
Indeed this court is of the belief that it has the inherent authority, consistent with constitutional constraints, to develop rules governing discovery, in the absence of express legislation authorizing or prohibiting such discovery, where the purpose and effect of those rules is to enhance the search for truth, to reduce the importance of secrecy and surprise, and to expedite and make more efficient pretrial procedures.
In short, then, the fact that the defendant was not required to give notice is not a basis for denying the motion.
*294 The defendant also claims that the cases relied on by the prosecutor are not adequate for his purposes. It is clear that Patterson does not primarily, or even inferentially, focus on the discovery issue before the court. Patterson is only relevant for our purposes because the defendant relied on the affirmative defense of extreme emotional disturbance and utilized psychiatric testimony; the prosecutor did not controvert this testimony. The court in People v Patterson (39 NY2d 288, 302, supra) said: "The purpose of the extreme emotional disturbance defense is to permit the defendant to show that his actions were caused by a mental infirmity not arising to the level of insanity, and that he is less culpable for having committed them.”
All that we can draw from the above is that psychiatric testimony is sometimes utilized by defendants relying on this affirmative defense because it raises the issue of the defendant’s "mental infirmity.”
The Blanks case (NYLJ, Sept. 14, 1977, p 11, col 6, supra) is, of course, directly on point and supportive of the People’s motion. While I agree with the defense that Patterson does not imply what Blanks says it does, I believe that Blanks is well reasoned and correctly decided. I quote from it briefly: "applying the rules of common sense and equity, it would seem that the People should be entitled to the relief sought. If we carry defendant’s argument to its logical extreme, a defendant who wished to interpose this defense could, assuming he had the means, retain a veritable battery of psychiatrists and psychologists to examine him and then come in and testify on his behalf, but the People would have no opportunity to interpose expert rebuttal testimony.”
It seems obvious to me that if a trial is to be a search for truth and expert testimony will figure prominently, both sides should have access to experts. That is certainly the case today where the People are relying on experts. The defendant, even if indigent, has access to the People’s reports and may have experts of his own choosing appointed. I can think of no good reason why the People should not have reciprocal rights.
This is especially important where experts are employed. An expert only testifies and gives an opinion where lay jurors are presumably not equipped to evaluate the specialized evidence. In such a situation the adversary system contemplates that both sides shall have access to the relevant facts. That *295 access must be pretrial access if the trial, once begun, is not thereafter to be delayed or interrupted unnecessarily.
In short, Blanks, not being an appellate decision, does not compel the granting of the motion, but it is persuasive authority in support of it.
The defendant next argues that the People may not rely on the insanity analogy to prevail here because insanity is a defense which, once raised, the People must disprove beyond a reasonable doubt, whereas the affirmative defense asserted here imposes no additional burden of proof on the People.
Certainly there is a distinction between defenses and affirmative defenses. The issue is whether that distinction is relevant and should be dispositive and lead to different results.
In Matter of Lee v County Ct. of Erie County (27 NY2d 432, supra), the Court of Appeals held that the privilege against self incrimination was waived when a defendant interposed an insanity defense. No part of the court’s discussion focused on the difference between defenses and affirmative defenses. Indeed, the court quoted with approval People v Esposito (287 NY 389, 397): "defendants may not both advance their claims and then seek to make the rules for the determination of those claims.”
In the leading case of Jones v Superior Ct. of Nevada County (58 Cal 2d 56), the defendant, charged with rape, voluntarily gave notice of his intent to introduce evidence in support of his affirmative defense of impotence. The California Supreme Court held that the prosecution was entitled to discover all reports and X rays that the defendant intended to introduce and the names of all witnesses he intended to call. The court held that this did not violate the privilege against self incrimination but simply required the defendant to reveal information he would shortly disclose anyway.
Actually the argument advanced by the defendant is self-defeating. Historically, the argument against discovery of a defendant’s case has been that a trial is not only a search for truth; it also advances other values, among which is that accused persons must not be forced to convict themselves, and requiring them to come forward with evidence defeats that basic goal. That argument is more powerful when addressed to defenses than it is when applied to affirmative defenses. Where the People have the burden of disproving a defense beyond a reasonable doubt, requiring the defendant to submit *296 himself to a psychiatric examination aids the People in meeting their burden. In an affirmative defense situation the People have no burden or, more accurately, the defendant by going forward with the affirmative defense concedes that the People have met their burden. No one "forces” a defendant to assume the burdens of an affirmative defense; he chooses to do so in the recognition that the People can meet their burden. If, therefore, as Matter of Lee (supra) declares, a defendant who relies on the defense of insanity may be ordered to submit to a psychiatric exam, then, a fortiori, so may a defendant who asserts the affirmative . defense of extreme emotional disturbance.
Our liberal discovery statutes reject trial by surprise or trial by enforced ignorance. It is the defense bar that has largely fought for and benefited from broad pretrial discovery. That discovery should properly be reciprocal where no constitutional right or privilege of the defendant is infringed thereby.
The court has inherent authority to order its processes (in the absence of contravening authority) to further the goals of a fair trial, of a search for truth and of a procedure which will reduce or eliminate interruptions in a trial once it has begun.
The motion is granted.