Hillsborough
No. 88-016

THE STATE OF NEW HAMPSHIRE

v.

JUNE BRIAND

July 11, 1988

*Stephen E. Merrill*, attorney general (*Andrew W. Serell*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

PER CURIAM. The State seeks interlocutory relief from the Superior Court's (*Groff*, J.) disposition of a pretrial motion. The defendant, June Briand, is charged with first degree murder in the shooting death of her husband in Hudson on February 12, 1987. The State has charged the defendant under RSA 630:1-a with purposely causing the death of her husband, James Briand, by shooting him in the head while he slept. RSA 630:1-a, II states that "purposely," for purpose of the above charge under RSA 630:1-a, I(a), means "that the actor's conscious object is the death of another, and that his act or acts in furtherance of that object were deliberate and premeditated."

In preparation for trial, Briand retained the services of a psychologist, Dr. Charles P. Ewing. The parties stipulate that Dr. Ewing has interviewed Briand and that, at trial, she may present his testimony to prove that she suffered from battered woman's syndrome. Briand states that she may use the testimony to support a potential self-defense plea or to prove provocation as it relates to the lesser-included offense of manslaughter.

At this point in the proceedings, we have no account of what the defendant means by "battered woman's syndrome," and the exact nature of the psychologist's anticipated testimony is not a matter of record before us. Suffice it to say that we have no occasion to rule on its admissibility, as the State does not challenge it at this time.

The State, rather, has responded to the defendant's notice of potential defenses and intent to call Dr. Ewing by filing pretrial motions requesting that an expert of its own choosing also evaluate Briand pursuant to RSA 135:17 (Supp. 1987). In response to the defendant's objection, the superior court denied this motion, ruling: (1) that it lacked authority to order such an evaluation absent notice that Briand would plead insanity; and (2) that such an evaluation would violate Briand's privilege against self-incrimination under the United States and New Hampshire Constitutions. The State filed an appeal from this decision under RSA 606:10, II(b). We reverse and remand.

The parties ask us to determine whether the trial court may order a criminal defendant to submit to evaluation by a psychiatrist of the State's choosing when she relies on psychiatric testimony to support a defense other than insanity. They also ask that we address the circumstances in which expert testimony regarding a State evaluation would be admissible at trial. The scope of the latter issue is, however, limited by the State's representation that it seeks authority to elicit testimony from its own witness only on matters previously subject to testimony by the defense's expert, and to offer it only for the purposes for which the defense expert's testimony was offered.

As the superior court recognized, the parties thus propose a two-fold inquiry. We must decide: (1) whether, and under what circumstances, the trial court has the authority to order a defendant to submit to State evaluation; and (2) whether its doing so in this case, or admitting resulting testimony in rebuttal at trial, would violate Briand's right against self-incrimination.

Briand first argues that the trial court cannot require her to submit to psychiatric examination by the State's expert because there is no statute granting it the authority to do so. RSA 135:17, the only potentially relevant statute, provides for a court-ordered, pretrial psychiatric examination only "if a plea of insanity is made in court, or said court is notified by either party that there is a question as to the sanity of the respondent." RSA 135:17. Briand has not pleaded insanity, nor has either party alerted the trial court that there is any question as to her sanity.

Many courts faced with similar situations have recognized that they have the inherent authority to order a defendant to submit to such an examination. These courts look to their inherent authority, in the absence of a statute authorizing compelled examination, not only where the defendant pleads insanity, *United States v. Reifsteck*, 535 F.2d 1030, 1033 (8th Cir. 1976); *United States v. Malcolm*, 475 F.2d 420, 424 (9th Cir. 1973); *United States v. Albright*, 388 F.2d 719, 722 (4th Cir. 1968); *contra State v. Olson*, 274 Minn. 225, 233, 143 N.W.2d 69, 75 (1966), but also where the defendant raises defenses recognized in other jurisdictions as distinct from insanity and typically requiring psychiatric evidence, *People v. Atwood*, 420 N.Y.S.2d 1002, 1005 (Sup. Ct. 1979) (extreme emotional disturbance); *People v. Danis*, 31 Cal. App. 3d 782, 786–87, 107 Cal. Rptr. 675, 678–79 (Ct. App. 1973) (diminished capacity).

Regardless of the proposed defense, courts have grounded their inherent authority upon their responsibilities both to promote the ascertainment of truth and to insure the orderliness of judicial

proceedings. "An expert only testifies and gives an opinion where lay jurors are presumably not equipped to evaluate the specialized evidence. In such a situation the adversary system contemplates that both sides shall have access to the relevant facts." *Atwood supra*. Where the accused supports claimed defenses at trial by introducing expert psychiatric testimony based upon personal interviews, the finder of fact can intelligently evaluate that testimony only if the State has an opportunity to produce evidence of a similar quality in rebuttal. Concern that the trial proceed without interruption, thus minimizing inconvenience to the parties and insuring a coherent presentation of both sides of the case, further dictates that court-ordered examination by the State's expert should usually be pretrial. *Atwood supra*.

■ We find that appeal to inherent authority is consistent with our own decisions requiring that parties submit to psychiatric analysis despite the absence of explicit statutory mandate. Although these decisions involve examinations to determine competency, *State v. Gagne*, 129 N.H. 93, 96–97, 523 A.2d 76, 78–79 (1986), or dangerousness and the appropriateness of civil commitment, *State v. Mercier*, 128 N.H. 57, 60, 509 A.2d 1246, 1248 (1986), they recognize the trial court's authority to take those actions necessary to further statutory or constitutional purposes. Surely it is equally imperative that we recognize the trial court's authority to take an action necessary to advance the very purpose of a trial. We therefore hold that, absent constitutional or other overriding concerns, New Hampshire courts have the power to order a criminal defendant to submit to psychological or psychiatric examination by an expert of the State's choosing where, as here, the defendant has submitted to psychological or psychiatric examination by defense experts, and has indicated an intention to rely on that testimony at trial.

■ Despite its authority to do so, however, the trial court may order a psychiatric examination, and allow the State to employ the resulting expert testimony at trial, only where this is consistent with the defendant's New Hampshire and United States constitutional privilege against self-incrimination. Briand claims that compelled examination and the introduction of resulting testimony would violate her right under both constitutions. In keeping with our decision in *State v. Ball*, 124 N.H. 226, 471 A.2d 347 (1983), we first consider her claim under part I, article 15 of the New Hampshire Constitution. We look to interpretations of parallel State and federal provisions to inform and guide our analysis.

■ There is no question that part I, article 15 of the New Hampshire Constitution protects statements a defendant may make to a court-appointed psychiatrist. Although some courts hold that these statements are akin to handwriting and voice exemplars, *see, e.g., United States v. Cohen*, 530 F.2d 43, 48 (5th Cir.), *cert. denied*, 429 U.S. 855 (1976), we do not agree. They are clearly testimonial. They are statements concerning the defendant's thoughts and actions, the substance of which the State's psychiatrist must depend on at trial. They are, further, statements which the defendant is compelled to make to a State expert, and which may be incriminating. *See Estelle v. Smith*, 451 U.S. 454, 464–65 (1981); *United States v. Byers*, 740 F.2d 1104, 1112–13 (D.C. Cir. 1984).

As the State points out, however, many courts have nevertheless determined that they may constitutionally order such examinations and admit such testimony. Some of these courts hold that a defendant who voluntarily submits to psychiatric examination by defense experts and introduces resulting psychiatric testimony at trial waives the constitutional right both to refuse a similar examination by the State's expert and to prevent the introduction of the results of such an examination in rebuttal. *See, e.g., United States v. Hinckley*, 525 F. Supp. 1342, 1349 (D.D.C. 1981), *aff'd on other grounds*, 672 F.2d 115 (D.C. Cir. 1982); *People v. Cruickshank*, 105 A.D.2d 325, 329–30, 484 N.Y.S.2d 328, 333–34 (N.Y. App. Div. 1985), *aff'd on other grounds*, 449 N.Y.S.2d 663 (1986); *Danis*, 31 Cal. App. 3d at 786, 107 Cal. Rptr. at 678.

Other courts base orders for State examination and the admission of resulting testimony at trial on a rationale closely resembling that underlying appeal to inherent authority. There is simply no way for the State to challenge the conclusions of defense experts and no way for the finder of fact to arrive at the truth if the accused may first introduce a defense dependent on psychiatric testimony based on an interview with the defendant, and then prevent the State from obtaining and introducing evidence of the same quality. *See, e.g., Buchanan v. Kentucky*, 107 S. Ct. 2906, 2917–18, *reh'g denied*, 108 S. Ct. 19 (1987); *Estelle, supra* at 465; *Byers, supra* at 1113; *Albright*, 388 F.2d at 724–25; *Pope v. United States*, 372 F.2d 710, 720–21 (8th Cir. 1967), *death penalty vacated and remanded for new sentence*, 392 U.S. 651 (1968), *cert. denied*, 401 U.S. 949 (1971); *People v. Segal*, 54 N.Y.2d 58, 64–67, 429 N.E.2d 107, 109–11, 444 N.Y.S.2d 588, 590–92 (1981); *Atwood*, 420 N.Y.S.2d at 1005; *State v. Seehan*, 258 N.W.2d 374, 377 (Iowa 1977).

We need not comment here on the adequacy of the analyses in these latter cases, insofar as some of them may appear to rest entirely on the public interest in otaining rebuttal testimony. We do not proffer such a rationale, but rely instead on prior State and federal case law holding that a defendant's testimony waives the privilege. We find this authority relevant here, because we view the defendant's anticipated reliance on expert evidence as a mechanism for introducing her own account of the facts, which should carry the accepted consequence of waiving her article 15 privilege.

■ Since the decision in *State v. Ober*, 52 N.H. 459 (1873), it has been settled law under the State Constitution that a defendant who elects to testify at trial "waives the constitutional protection in his favor, and subjects himself to the peril of being examined as to any and every matter pertinent to the issue." *Id.* at 463 (citations omitted); *accord Fitzpatrick v. United States*, 178 U.S. 304, 315 (1900). Thus, it is a defendant's voluntary act of taking the stand and giving testimony that is sufficient to constitute the waiver and subject the defendant to enquiries he would not otherwise be compelled to answer. *See Jenkins v. Anderson*, 447 U.S. 231, 238 (1980); *Harris v. New York*, 401 U.S. 222, 225 (1971); *Raffel v. United States*, 271 U.S. 494, 496–97 (1926).

A defendant performs a functionally similar voluntary act when he calls a psychologist or psychiatrist to testify on his behalf, based on a personal interview with him. This is so because the expert witness depends upon the defendant's own statements of relevant facts as the foundation for the expert's opinion. Presumably, the witness would lack an adequate foundation to form and express such an opinion, and would therefore be barred from giving one, without the defendant's account of the relevant events of his own history and state of mind. Because the expert's testimony is thus predicated on the defendant's statements, the latter are explicitly or implicitly placed in evidence through the testimony of the expert during his direct and cross-examination. Since a defendant would waive his privilege against compelled self-incrimination if he took the stand and made those same statements himself, his decision to introduce his account of relevant facts indirectly through an expert witness should likewise be treated as a waiver obligating him to provide the same access to the State's expert that he has given to his own, and opening the door to the introduction of resulting State's evidence, as the State requests here, to the extent that he introduces comparable evidence on his own behalf. Just as the State may not use a compelled psychological examination to circumvent the privilege against self-incrimination, *see Estelle*, 451 U.S. at 463,

neither may a defendant voluntarily employ a psychological witness wholly to negate the waiver that his direct introduction of personal testimony would otherwise effect.

Briand suggests that the State can obtain adequate evidence of her mental condition by deposing and cross-examining her experts, presenting lay testimony and the general testimony of its own experts, and reviewing the medical records that she agrees to make available. However, "[m]edical science . . . deems these poor and unsatisfactory substitutes for testimony based upon prolonged and intimate interviews between the psychiatrist and the defendant." *Albright*, 388 F.2d at 725.

Briand further contends that, even if a finding of waiver is appropriate in other cases, it is inappropriate here because her self-defense claim differs from most defenses relying on expert psychiatric testimony. Unlike the typical insanity defense, she argues, her claim does not admit guilt, but relies on evidence of "battered woman's syndrome" to show the absence of premeditation and deliberation, or to show extreme provocation or self-defense. Thus, she argues, if the State presents psychiatric evidence based upon personal interviews in rebuttal, it will essentially use her compelled, testimonial statements to prove a substantive element of its case.

Although we are sympathetic to Briand's implicit concern that the trial court admit compelled evidence only on issues as to which she has presented psychiatric testimony in her defense, we find the above argument to lack merit. Whether the defendant pleads insanity or relies on some other defense based on psychiatric testimony, that testimony ultimately goes to the guilt or innocence of the defendant. *United States v. Halbert*, 712 F.2d 388, 390 (9th Cir. 1983), *cert. denied*, 465 U.S. 1005 (1984); *People v. Segal*, 54 N.Y.2d at 64–67, 429 N.E.2d at 109–11, 444 N.Y.S.2d at 590–92. *Contra State v. Vosler*, 216 Neb. 461, 471–73, 345 N.W.2d 806, 812–13 (1984). The privilege against self-incrimination precludes the State from "prov[ing] by evidence wrested from a defendant whether [s]he is guilty as charged . . . ." *Albright, supra* at 723. It does not prevent the State, in the context of this case, from examining the defendant in order to rebut evidence she presents on an issue she has introduced.

Contrary to Briand's suggestion, the situation here also differs from the one we recently addressed in *Nelson v. Lewis*, 130 N.H. 106, 534 A.2d 720 (1987). There we refused to find that a civil plaintiff had waived the physician-patient privilege for purposes of the defendant's *ex parte* interview with her physician. We based

that decision, in large part, on the availability of a formal deposition with both parties present. We determined that the physician's deposition would, at the same time, insure greater protection for the statutory privilege and provide information nearly equivalent to that available through an *ex parte* interview. The alternatives available to the State here, on the other hand, are unlikely to provide anything approaching the information available through psychiatric examination.

Our analysis of the Federal Constitution does not differ significantly from the preceding State analysis, and we find that the protections the federal document accords the privilege against self-incrimination do not exceed parallel New Hampshire protections. As our references to numerous federal cases indicate, federal courts hold that, absent unusual circumstances and provided that appropriate cautionary measures are taken, they may constitutionally order a defendant to submit to psychiatric examination, and allow the State to introduce resulting testimony in rebuttal at trial, when a defendant submits to psychiatric examination by her own experts and introduces their testimony at trial in her defense. *See, e.g., Byers*, 740 F.2d at 1113; *Halbert*, 712 F.2d at 390; *Albright*, 388 F.2d at 723; *Pope*, 372 F.2d at 721; *Hinckley*, 525 F. Supp. at 1349–50.

While we do not analyze these federal cases again in detail, given our preceding State discussion, we do emphasize that Briand's heavy reliance on *Estelle v. Smith*, 451 U.S. 454 (1981), is misplaced. *Estelle* prevented the State from employing compelled psychiatric testimony, in the sentencing phase of a trial on the issue of dangerousness, to prove its case against a defendant who had never placed his mental condition at issue. *Id.* at 466. The situation here, on the other hand, is one of those in which *Estelle* suggested that compelled examination and the limited use of resulting expert testimony at trial might be appropriate. As *Estelle* recognized, the defendant's "silence may [otherwise] deprive the State of the only effective means it has of controverting [her] proof on an issue that [s]he interjected into the case." *Id.* at 465; *Buchanan*, 107 S. Ct. at 2917.

■ We therefore hold that a criminal defendant waives her right to resist the State's request that she submit to court-ordered psychiatric examination when she (1) submits to psychiatric examination by defense experts; and (2) evinces the intention to rely on that testimony at trial.

■ The State does not claim that expert testimony resulting from such an examination should be admitted except in rebuttal, after the defendant has first presented her own psychological witness, and we confine ourselves to ruling that testimony from the State's expert is admissible under these circumstances. Because we likewise understand that the State does not seek authority to elicit testimony from its own expert except on matters covered by the expert for the defense, and for the same purposes for which the defense expert's testimony was offered, we hold only that the rebuttal testimony is admissible within these limits.

■ If, therefore, the defense indicates that it offers its own witness's testimony only for a limited purpose, the trial judge must instruct the jury to limit its consideration of the testimony accordingly. And the court will likewise, at the defendant's request, instruct the jury that testimony on the same subject from the State's expert must be considered only for that same limited purpose.

We finally note that the General Court has not, as it has for the insanity defense, adopted a statute to cover a psychological or psychiatric defense like the one suggested here. *See* RSA 135:17. In addition, the superior court has not recommended rules regarding the procedures to be followed in such cases. *See* Super. Ct. R. 101. We believe a statute and rules of this kind would aid the trial court in future cases of this nature. As there is now no requirement that defendants give notice of the intention to introduce psychiatric testimony generally, legislation in this regard would also be helpful. For the purpose of this trial, however, the trial court may take such actions as are necessary to allow the parties to obtain necessary expert witnesses.

*Reversed and remanded.*

BATCHELDER, J., concurred specially; the others concurred.

BATCHELDER, J., concurring specially: I concur in the result reached by the court. I write separately only on the issue of the extent to which the State may employ the testimony of its expert resulting from a court-ordered psychiatric or psychological evaluation of the defendant. The court seems to decide this case on the basis of the State's representations that it will only use the evidence in rebuttal to the defendant's expert on matters the defendant places in issue. It is my view, however, that the State has correctly anticipated the constitutional limitations on the use of such evidence under part I, article 15 of the New Hampshire Constitution, which is also the standard recognized in *United States v. Byers*, 740 F.2d 1104, 1113 (D.C. Cir. 1984), and I would so restrict the State on the force of that provision.