## STATE OF HAWAII, Plaintiff-Appellee, *v.* DEVIRON M. NIZAM, Defendant-Appellant

NO. 12635

(CRIMINAL NO. 87-0211)

MARCH 21, 1989

BURNS, C.J., HEEN AND TANAKA, JJ.

404

OPINION OF THE COURT BY HEEN, J.

Defendant was indicted in this case for attempted murder, Hawaii Revised Statutes (HRS) §§ 705-500, 707-701(1) (1985)[1] (Count I), and assault in the first degree, HRS § 707-710 (1985) (Count II), arising out of the infliction of severe injuries on his six-month-old son. He was convicted by a jury on Count II only, a class B felony. HRS § 707-710(2) (1985). Under HRS § 706-662(5) (1985),[2] however, Defendant was sentenced to an extended term of imprisonment for twenty years. He appeals. We affirm.

[1] The indictment was returned on December 24, 1986. Act 314, § 49, 1986 Haw. Sess. Laws 593, 615-616, amended the penal code provisions regarding murder to provide for a crime of Murder in the First Degree. Act 314 became effective on January 1, 1987.

[2] The pertinent provisions of HRS § 706-662(5) (1985) are as follows:
    Criteria for sentence of extended term of imprisonment for felony. The court may sentence a person who has been convicted of a felony to an extended term of imprisonment if it finds one or more of the grounds specified in this section.

* * *

At trial, Defendant raised the HRS § 707-702(2) (1985 & Supp. 1988)[3] defense of "extreme mental or emotional disturbance for which there is a reasonable explanation," through the testimony of his only witness, Dr. Daryl Matthews (Dr. Matthews), a psychiatrist, that in his opinion Defendant was under the influence of extreme mental or emotional disturbance at the time of the event. Dr. Matthews' opinion was based on interviews of Defendant, his wife, and his mother, together with a review of the police reports of the event and reports of other doctors who had evaluated Defendant after the alleged offense.

After the defense rested, the trial court denied a motion by Defendant to preclude the State's rebuttal witness, Dr. Harold Hall (Dr. Hall), from testifying. Dr. Hall then testified that some of Defendant's actions at the time of the offense tended to indicate he was not acting under the influence of extreme mental or emotional disturbance. Dr. Hall's testimony was based upon his review of police reports regarding the offense, another police report of a complaint of violence against his wife, interviews of Defendant's wife's sister and father, and the prosecutor's notes of Dr. Matthews' testimony. The State then moved the court to direct Defendant to allow Dr. Hall to interview him and to interview certain psychologists and psychiatrists at Pearl Harbor who had evaluated Defendant's mental condition after the alleged offense. Dr. Hall testified that he needed the information from those interviews in order to form an opinion on Defendant's mental or emotional state at the time of the offense. When Defendant refused to allow the

(5) Offender against . . . minor under the age of eight. The defendant is an offender against . . . [a] minor under the age of eight whose commitment for an extended term is necessary for the protection of the public. The court shall not make such a finding unless:

(a) The defendant attempts or commits any of the following crimes: murder, a sexual offense which constitutes a felony under part V of chapter 707, robbery, felonious assault, burglary, and kidnapping; and

(b) The defendant, in the course of committing or attempting to commit the crime, inflicts serious bodily injury upon a person who is:

\* \* \*

(iii) Eight years of age or younger; and

(c) Such disability is known or reasonably should be known to the defendant.

[3]HRS § 707-702(2) has been amended by Act 181, § 8, 1987 Haw. Sess. Laws 407, 410-411.

interview on self-incrimination grounds, the court denied the State's motion and, on a further motion by the State, struck Dr. Matthews' testimony. The court also struck Dr. Hall's testimony.

On appeal, Defendant seeks a new trial for attempted manslaughter and assault in the first degree, asserting that the trial court erred in (1) denying his motion to dismiss the indictment; (2) denying his motion to preclude the State's expert from testifying on Defendant's state of mind because he had not personally examined the Defendant; (3) striking the testimony of his expert; (4) refusing to give his requested instruction that extreme mental or emotional disturbance for which there is a reasonable explanation reduces the offense from attempted murder to attempted manslaughter; (5) permitting the State's expert to testify about Defendant's acts of aggression toward people other than the victim, denying his motion to strike that testimony, and denying his mistrial motion based on that testimony; and (6) denying his motion at the end of the State's rebuttal for a continuance to pursue other defenses.

On August 8, 1988, after Defendant filed his opening brief, the State filed a motion in the supreme court to strike Defendant's points (2) through (6), arguing that, since Defendant cannot be re-tried either for attempted murder or attempted manslaughter, the points are moot. The supreme court denied the motion but ordered that the matters raised by the motion would be considered when determining the merits of the appeal.

We agree with the State that Defendant cannot have the remedy he seeks because he cannot be re-tried for attempted murder or attempted manslaughter. HRS § 701-110 (1985); *State v. Feliciano,* 62 Haw. 637, 618 P.2d 306 (1980). Moreover, we have examined the record with regard to Defendant's points (2) through (6) and find no error. We will first discuss those points.

I.

A.

Defendant objected to allowing Dr. Hall's testimony, relying on HRS § 704-410(1) (1985 & Supp. 1988), which provides in pertinent part that,

no one who has not examined the defendant shall be competent to testify to an expert opinion with respect to the physical or mental condition of the defendant, as distinguished from the validity of the procedure followed by, or the general scientific propositions stated by, another witness.

Upon examination of the statute, we conclude the court was correct in denying Defendant's motion to preclude Dr. Hall from testifying.

A cardinal principle of statutory construction is that each part of a statute should be construed in connection with every other part so as to produce a harmonious whole. *State v. Davis,* 63 Haw. 191, 624 P.2d 376 (1981). HRS chapter 704 is part of the penal code, the legislature's broad and sweeping reform and codification of Hawaii's substantive and procedural criminal laws. Act 9, 1972 Haw. Sess. Laws 32. Chapter 704 specifies the procedures for pleading and proving the affirmative defense that the defendant "lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law[,]" HRS § 704-400(1) (1985), or for establishing that the defendant "lacks the capacity to understand the proceedings against him or to assist in his own defense[.]"[4] HRS § 704-403 (1985). HRS § 704-404 (1985 & Supp. 1988) provides the mechanism for appointment of an examining panel when the defendant gives notice of his intention to rely on the "insanity" defense or there is reason to doubt his fitness to proceed, and HRS § 704-410 (1985 & Supp. 1988) prescribes the form of expert testimony regarding the defense.

---

[4]HRS chapter 704 concerns a defendant's physical or mental condition that may be made an issue with respect to (1) his capacity to have a particular state of mind which is required to establish an element of an offense, (2) his responsibility for his conduct, and (3) his fitness to proceed. First, § 704-401 (1985) provides that evidence that a defendant suffered from a physical or mental disease, disorder or defect is admissible when relevant to prove that he did or did not have a state of mind which is required to establish an element of the offense. This section applies to the state of mind requirement that "a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense." HRS § 702-204 (1985). *See* § 702-205 (1985), § 702-206 (1985 & Supp. 1988). Second, § 704-402 (1985) delineates the affirmative defense of physical or mental disease, disorder, or defect excluding responsibility. Third, § 704-403 (1985) prohibits trial, conviction or sentencing of any person who "as a result of a physical or mental disease, disorder, or defect lacks capacity to understand the proceedings against him or to assist in his own defense."

Reading HRS chapter 704 in the context of the entire penal code indicates that the legislature intended chapter 704's provisions to apply only to the issues raised under that chapter. They were not intended to apply to the manslaughter defense under HRS § 707-702(2). This is made abundantly clear in the first sentence of HRS § 704-410(1) which provides that the examining experts' testimony may be presented either at the hearing to determine the defendant's fitness to proceed, or at the trial of the issue of the insanity defense. The scheme of HRS chapter 704 is to require proof of the insanity and fitness to proceed issues in accordance with strict procedures. Nothing in the chapter or in the penal code indicates that these strict procedures apply to the manslaughter defense.

This is because the two defenses are not the same. "The point of the extreme emotional disturbance defense is to provide a basis for mitigation that differs from a finding of mental defect or disease precluding criminal responsibility." *State v. Dumlao*, 6 Haw. App. 173, 180, 715 P.2d 822, 828 (1986). The scheme of the penal code indicates an intent to require a precise and uniform method for proving the defense of mental defect or disease, but to allow less restrictive means of proving the mitigating extreme mental or emotional defense of manslaughter. *See id.* Had the legislature intended chapter 704's provisions to apply to the manslaughter defense it could easily have done so. It did not, and we construe the legislature's intent to be that chapter 704 would not apply to a defense under HRS § 707-702(2). In our view the explanation lies in the legislature's recognition of the distinction between the relief accorded to a defendant who proves one or the other defense.

HRS § 704-410 relates only to testimony regarding the defense of physical or mental disease, disorder, or defect, or the issue of a defendant's fitness to proceed, and the provision of HRS § 704-410(1) that no one who has not examined the defendant shall be competent to testify to an expert opinion as to the defendant's physical or mental condition is not applicable to the defense of extreme mental or emotional disturbance raised in mitigation of a charge of attempted murder pursuant to HRS § 707-702(2).

Moreover, in an abundance of caution, the trial court specifically limited Dr. Hall's testimony to the data he had examined in preparation for his testimony, and Dr. Hall was instructed that he

was not to express an opinion as to Defendant's state of mind during the event. Dr. Hall's testimony was admissible under Rule 702, Hawaii Rules of Evidence (HRE) (1981),[5] since it would have assisted the jury in determining the question of Defendant's mental disturbance. Dr. Hall testified that the data he used was of the type allowed by Rule 703, HRE,[6] and the trial court did not abuse its discretion in allowing the testimony.

### B.
### 1.

Defendant argues that the trial court's action in striking Dr. Matthews' testimony violated his right under the Sixth Amendment to the United States Constitution and article I, section 14 of the State Constitution, to present a defense. This issue requires us first to consider the preliminary question whether extreme mental or emotional disturbance is a defense to a charge of attempted murder.

In *State v. Tagaro*, 7 Haw. App. ____, 757 P.2d 1175 (1987), we held that the crime of attempted manslaughter as defined in HRS§ 707-702(1) (a) is an included offense of attempted murder where the defendant raises the defense of self-defense and introduces evidence to support the defense. *Tagaro* was premised on the conclusion that the definition of manslaughter in HRS § 707-702(1) (a) as "recklessly" causing the death of another, includes the actions of one who, as in an act of self-defense, may harbor a specific intent to kill. However, in *Tagaro* we did not reach the

---

[5]Rule 702, Hawaii Rules of Evidence (HRE) (1981), provides:

Testimony by experts. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

[6]Rule 703, HRE (1981), provides:

Bases of opinion testimony by experts. The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court may, however, disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

question whether a defendant charged with attempted murder could, as Defendant did in this case, rely on the defense of extreme mental or emotional disturbance afforded by HRS § 707-702(2) (1985). *Tagaro,* 7 Haw. App. at _____ n.3, 757 P.2d at 1176-1177 n.3. We now hold that a defendant can do so, and turn to the question of whether Defendant's right to present that defense was improperly denied to him.

2.

In *State v. Horn,* 58 Haw. 252, 566 P.2d 1378 (1977), the supreme court held that a defendant has the constitutional right to present any and all competent evidence in his defense, and stated that "where the accused asserts a defense sanctioned by law to justify or to excuse the criminal conduct charged, and there is some credible evidence to support it, the issue is one of fact that must be submitted to the jury." *Id.* at 255, 566 P.2d at 1380.

However, a defendant's right to present relevant evidence is not without limitation and "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Rock v. Arkansas,* 483 U.S. 44, _____, 107 S.Ct. 2704, 2711, 97 L.Ed.2d 37, 49 (1987) (citing *Chambers v. Mississippi,* 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297, 309 (1973)). The restrictions on Defendant's right must not be arbitrary, or disproportionate to those legitimate interests. *Rock v. Arkansas, supra.*

In *State v. Briand,* 130 N.H. 650, 547 A.2d 235 (1988), the New Hampshire Supreme Court held that courts have the inherent authority to order a defendant to submit to psychiatric examination by the state's expert where the defendant raises a defense typically requiring psychiatric testimony and introduces such testimony in support of the defense. The authority is grounded on the courts' "responsibilities both to promote the ascertainment of truth and to insure the orderliness of judicial proceedings." *Id.* 130 N.H. at 653, 547 A.2d at 237. The court held that the defendant, by presenting the expert testimony in support of her defense, waived her right against self-incrimination. The same result was reached in *People v. Atwood,* 101 Misc.2d 291, 420 N.Y.S.2d 1002 (1979), the court, there, stating that

[t]he court has inherent authority to order its processes (in the absence of contravening authority) to further the goals of a fair trial, of a search for truth and of a procedure which will reduce or eliminate interruptions in a trial once it has begun.

*Id.* 101 Misc.2d at 295-96, 420 N.Y.S.2d at 1006.

In *United States v. Nobles,* 422 U.S. 225, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), the Supreme Court considered the question whether the trial court properly refused to allow a defense investigator witness to testify about his interviews of the prosecution's identification witnesses where the defense counsel stated he would not furnish the investigator's report to the prosecutor at the completion of the investigator's testimony. The court held that the sanctions did not violate the defendant's sixth amendment right to present a defense, and "was an entirely proper method of assuring compliance with [the trial court's] order." *Id.* 422 U.S. at 241, 95 S.Ct. at 2171, 45 L.Ed.2d at 155.

The Supreme Court stated:

The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth. Deciding, as we do, that it was within the court's discretion to assure that the jury would hear the full testimony of the investigator rather than a truncated portion favorable to respondent, we think it would be artificial indeed to deprive the court of the power to effectuate that judgment. Nor do we find constitutional significance in the fact that the court in this instance was able to exclude the testimony in advance rather than receive it in evidence and thereafter charge the jury to disregard it when respondent's counsel refused, as he said he would, to produce the report.

*Id.* 422 U.S. at 241, 95 S.Ct. at 2171-2172, 45 L.Ed.2d. at 155.

In our view, the lower court's sanction in the instant case was appropriate and proportionate to the state's interest in facilitating the search for truth in criminal proceedings. The state has a legitimate interest in every criminal case in ensuring that a jury is provided with the relevant evidence on both sides of an issue in order to assist it in determining the truth and arriving at a just decision.

*See United States v. Nobles, supra; State v. Briand, supra.* Confidence in the jury system requires nothing less, and the court's action in this case was in furtherance of that state interest. Additionally, the trial court's action was not arbitrary or precipitously taken. It came only after lengthy discussion with counsel and after Defendant was advised that the court would consider striking Dr. Matthews' testimony if Defendant refused to allow the interview. He did refuse and we find neither an abuse of discretion nor a violation of Defendant's compulsory process rights in the court's action. Moreover, Defendant was not otherwise prejudiced since the trial court also struck Dr. Hall's testimony.

## C.

When the trial court struck the expert testimony, there was no evidence to support Defendant's attempted manslaughter instruction and it was correctly refused. *Cf. State v. O'Daniel,* 62 Haw. 518, 616 P.2d 1383 (1980). Defendant's argument that the testimony of his wife's mother and that of his wife's close friend, Teresa Pimental, was sufficient to support the instruction, is without merit. They testified that within minutes of the event Defendant's wife had phoned them and described the incident to them. However, their testimony did not provide a reasonable explanation for Defendant's asserted extreme mental or emotional disturbance.

## D.

Dr. Hall testified that his information showed that Defendant had committed other acts of aggression against his wife, her sister, and her father. Defendant argues that the trial court erred in denying his motions to strike that testimony and for a mistrial. We find no error. The evidence was admissible under Rule 404(b), HRE (1981), as probative of the question whether the acts of violence towards the victim were really the result of extreme mental or emotional disturbance.

Moreover, Defendant did not deny that he committed the assault against the victim and, since the evidence he complains of was eventually stricken, the evidence could not have contributed to the verdict on the assault charge.

## E.

We find no error in the trial court's denial of Defendant's motion for a continuance at the end of the case. Defendant was aware of all the evidence before trial began and should have explored all possible defenses. He chose to present only one defense and it was not an abuse of the trial court's discretion to deny the motion.

## II.

Defendant's assertion that the lower court erred in denying his motion to dismiss the indictment for the use of hearsay testimony in the grand jury proceedings is without merit.

Hearsay may be used to present a case to the grand jury where direct testimony is unavailable, *State v. Layton*, 53 Haw. 513, 497 P.2d 559 (1972), and where it is not deliberately used in place of better evidence to improve the case for indictment, dismissal of the indictment is not required. *State v. Murphy*, 59 Haw. 1, 575 P.2d 448 (1978).

Here, Defendant's wife, who, besides Defendant and the victim, was the only witness to the alleged offense, refused to testify before the grand jury, even after she was granted immunity by the circuit court. Consequently, the hearsay testimony was essential. Defendant's argument that the grant of immunity was ineffective is without merit.

Affirmed.

*Clifford Hunt* and *Linda C. Ramirez,* Deputy Public Defenders, on the brief for defendant-appellant.

*Ellen B. Politano,* Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for plaintiff-appellee.