Belknap
No. 2008-702

THE STATE OF NEW HAMPSHIRE

v.

RENO DEMESMIN

Submitted: October 8, 2009
Opinion Issued: January 28, 2010

*Kelly A. Ayotte,* attorney general (*Nicholas Cort,* assistant attorney general, on the brief), for the State.

*David M. Rothstein,* deputy chief appellate defender, of Concord, on the brief, for the defendant.

HICKS, J. The defendant, Reno Demesmin, appeals his conviction of first degree assault. *See* RSA 631:1 (2007). He argues that the Superior Court (*Smukler,* J.) erred when it permitted the re-evaluation of his competency to stand trial. We affirm.

The record supports the following facts. In October 2006, a grand jury indicted the defendant on one count of first degree assault. Before trial, defense counsel moved for an evaluation of competency because of possible intellectual disability. Dr. James J. Adams, chief forensic examiner for the State of New Hampshire, examined the defendant. Dr. Adams concluded that there was "no evidence that th[e] defendant [was] competent to stand trial." However, he expressed concern that the defendant was malingering during the evaluation.

Based upon Dr. Adams' findings, the parties submitted a stipulation to the trial court, which it accepted with modifications. The agreement stated that while "there is a question as to whether the Defendant is malingering," the defendant "shall be found incompetent." The agreement then called for a "[h]earing to be scheduled on whether the defendant should continue to remain in custody pursuant to RSA 135:17-a, V." RSA 135:17-a, V (Supp. 2009) permits a court to order a person to remain in custody for a reasonable time if the defendant is dangerous to himself in order to evaluate the appropriateness of involuntary treatment. Finally, the agree-

ment provided that "should the Defendant be found to have been restored to competency during the next year that the State shall present an Indictment against the Defendant."

In June 2007, the trial court held a hearing to determine whether the defendant was dangerous to himself or others. *See* RSA 135:17-a, V. The trial court found the defendant dangerous and ordered that he be evaluated for the appropriateness of involuntary commitment. Dr. Eric G. Mart, a licensed psychologist, then examined the defendant and found that he was not eligible for civil commitment because he did not meet the diagnostic criteria for an intellectual disability. *See* RSA 171-B:2, IV (Supp. 2009). Based upon these results, the State moved for a second competency assessment, contending that the defendant malingered during his first evaluation and was, in fact, competent to stand trial. Over the defendant's objection, the trial court granted the State's motion and the defendant was re-evaluated for competency. Subsequently, the trial court found the defendant competent to stand trial. At trial, a jury found the defendant guilty of first degree assault.

On appeal, the defendant first asserts that the trial court lacked jurisdiction to order the re-assessment of his competency under the original indictment, because by ordering an evaluation of the defendant's dangerousness under RSA 135:17-a, V, the trial court impliedly dismissed without prejudice the original indictment by operation of law. According to the defendant, "[p]roceedings under RSA 135:17-a, V do not commence unless the case against the defendant [has been] dismissed" (quotation omitted). Therefore, before the State could resume prosecuting the defendant, the State had to re-indict him.

█ The State disagrees, contending that the trial court never found by "clear and convincing evidence" that the defendant could not be restored to competency, a prerequisite for there to be a dismissal of the case without prejudice. Moreover, the State argues that the defendant did not preserve this argument for appeal because "it was never made below, and was never mentioned either in the notice of appeal or in any motion to add issue." We, however, will address the merits of this argument. Subject matter jurisdiction may be raised at any time in the proceedings, including on appeal, by the parties, or by the court *sua sponte. See Route 12 Books & Video v. Town of Troy*, 149 N.H. 569, 575 (2003).

The defendant's argument requires us to interpret RSA 135:17-a. In matters of statutory interpretation, we are the final arbiter of legislative intent as expressed in the words of the statute considered as a whole. *State v. Shannon*, 155 N.H. 135, 137 (2007). We first examine the language of the statute and ascribe the plain and ordinary meanings to the words used. *Id.*

at 137-38. Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme. *Id.* at 138.

[2-4] RSA 135:17-a, I, and V state,

> I. If, after hearing, the district court or superior court determines that the defendant is not competent to stand trial, the court shall order treatment for the restoration of competency unless it determines, by clear and convincing evidence, that there is no reasonable likelihood that the defendant can be restored to competency through appropriate treatment within 12 months. If the court finds, by clear and convincing evidence, that the defendant cannot be restored to competency within twelve months, the case against the defendant shall be dismissed without prejudice and the court shall proceed as provided in paragraph V.
>
> . . . .
>
> V. If the court has determined that the defendant has not regained competency, and the court determines that he or she is dangerous to himself or herself or others, the court shall order the person to remain in custody for a reasonable period of time, not to exceed 90 days, to be evaluated for the appropriateness of involuntary treatment pursuant to RSA 135-C:34 or RSA 171-B:2. The court may order the person to submit to examinations by a physician, psychiatrist, or psychologist designated by the state for the purpose of evaluating appropriateness and completing the certificate for involuntary admission into the state mental health services system, the state developmental services delivery system, or the secure psychiatric unit as the case may be . . . .

RSA 135:17-a, I, specifically requires the trial court to find by "clear and convincing evidence[]" that the defendant cannot be restored to competency" in order for the case against the defendant to be dismissed without prejudice. Here, the trial court made no such finding. The trial court merely accepted the parties' stipulation, which provided that "at this point, the Defendant shall be found incompetent" as a result of "Dr. Adams' lack of diagnosis of competency." The agreement then called for a dangerousness hearing pursuant to RSA 135:17-a, V. We will not infer from silence in the record that the trial court found by "clear and convincing evidence[] that the defendant cannot be restored to competency." RSA 135:17-a, I. Such a finding must be explicit. The trial court, therefore, never dismissed the original indictment against the defendant, and the State was not required to re-indict him to continue prosecuting him. "There is a presumption

against divesting a court of its jurisdiction once it has properly attached, and any doubt is resolved in favor of retaining jurisdiction." 21 AM. JUR. 2D *Criminal Law* § 434 (2008); *see Com. v. Adkins*, 29 S.W.3d 793, 795 (Ky. 2000); *People v. Veling*, 504 N.W.2d 456, 460 (Mich. 1993). Further, it is common practice that "[o]nce a court has acquired jurisdiction, no subsequent error or irregularity will remove that jurisdiction, so that a court may not lose jurisdiction because it makes a mistake in determining either the facts, the law, or both." 21 AM. JUR. 2D *Criminal Law* § 434; *see also People v. Davis*, 619 N.E.2d 750, 754 (Ill. 1993).

Second, the defendant contends that the trial court exceeded its statutory authority under RSA 135:17-a by ordering a second competency evaluation. Specifically, he argues that RSA 135:17-a does not authorize a trial court to order the re-assessment of a defendant's competency where the defendant has been found incompetent and dangerous but has not been involuntarily committed. According to the defendant, a re-evaluation may only occur during the period of involuntary commitment and before expiration of the limitations period. *See* RSA 135:17-a, VI (Supp. 2009).

RSA 135:17-a lays out the procedures a trial court should follow after making an initial determination that the defendant is not competent to stand trial. It includes provisions to order treatment for the restoration of competency, to order a person determined "dangerous to himself . . . or others" to be held for up to ninety days for evaluation, and to order an intellectually disabled or mentally ill person involuntarily committed under RSA chapter 135-C or RSA chapter 171-B. RSA 135:17-a, V. RSA 135:17-a does not address specifically how a trial court should proceed if evidence exists that a defendant has procured a finding of incompetence through malingering or fraud. We, therefore, look to the common law for guidance.

█ It is a basic principle that "statutory enactments should be construed by courts as consistent with the common law." 15A AM. JUR. 2D *Common Law* § 15 (2000). Indeed, we have stated that "we will not interpret a statute to abrogate the common law unless the statute clearly expresses that intent." *State v. Elementis Chem.*, 152 N.H. 794, 803 (2005) (quotation omitted). Here, RSA 135:17-a does not state a clear intent to abrogate the common law governing malingering.

█ Trial courts have the inherent authority and obligation to order an initial psychiatric or psychological evaluation of a defendant to determine competency to stand trial. *See State v. Veale*, 158 N.H. 632, 640, *cert. denied*, 78 U.S.L.W. 3320 (U.S. 2009). A court also has the authority to order a second competency evaluation upon request of the State where "the defendant has submitted to psychological or psychiatric examination by defense experts, and has indicated an intention to rely on that testimony at

trial." *State v. Briand,* 130 N.H. 650, 653 (1988); *see also* RSA 135:17, II (Supp. 2009) (permitting separate competency evaluations upon request of the parties). In reaching our holding in *Briand,* we rejected the defendant's argument that the State could not require her to submit to an examination by the State's expert "because there [was] no statute granting it the authority to do so." *Id.* at 652. Trial courts possess this inherent authority to protect the constitutional rights of the defendant, *State v. Gagne,* 129 N.H. 93, 96-97 (1986), and "to promote the ascertainment of truth and to insure the orderliness of judicial proceedings," *Briand,* 130 N.H. at 652-53. Whether a trial court has inherent authority to order a second evaluation and competency hearing when there is evidence of malingering is an issue of first impression in New Hampshire.

Concern that a defendant is fabricating or exaggerating the symptoms of intellectual disability or mental illness to avoid trial is not a recent phenomenon. For example, Sir Matthew Hale, a Lord Chief Justice of England, in his seventeenth century treatise, warned that "there may be great fraud" in determinations of mental competence. 1 M. HALE, PLEAS OF THE CROWN *35; *see also King v. Dyson,* 73 Car. & P. 305, n.(*a*), 173 Eng. Rep. 135-36, n.(*a*) (1831). Courts presume that the legal process will eventually catch those who malinger and permit their trial. *See Cooper v. Oklahoma,* 517 U.S. 348, 365 (1996) (observing that it would be "unusual for even the most artful malingerer to feign incompetence successfully for a period of time while under professional care").

■ Upon detecting evidence of malingering, trial courts often order the re-examination of a defendant and hold a subsequent competency hearing. *See, e.g., United States v. Izquierdo,* 448 F.3d 1269 (11th Cir. 2006); *United States v. Greer,* 158 F.3d 228 (5th Cir. 1998). For example, in *Izquierdo,* the trial court ordered the psychiatric re-evaluation of the defendant after hearing testimony from another inmate that the defendant told him he "planned 'to act crazy' " to be found mentally incompetent. *Izquierdo,* 448 F.3d at 1273-74. The trial court then held a second competency hearing. *Id.* at 1275. Similarly, in *Greer,* the trial court held a second competency hearing after receiving a report from the defendant's treating doctor that he had malingered. *Greer,* 158 F.3d at 230-31. The Fifth Circuit subsequently upheld the trial court's application of an obstruction of justice enhancement to the defendant's sentence for feigning incompetence. *Id.* at 234-38. The court reasoned, "[W]hile a criminal defendant possesses a constitutional right to a competency hearing if a bona fide doubt exists as to his competency, he surely does not have the right to create a doubt as to his competency or to increase the chances that he will be found incompetent by feigning mental illness." *Id.* at 237.

In *Cooper*, the United States Supreme Court implicitly embraced the practice of a second competency hearing in the face of evidence of malingering. *Cooper*, 517 U.S. at 365-66. The Court held unconstitutional Oklahoma's statutory requirement that a defendant prove his incompetence by clear and convincing evidence partially because "a conclusion that the defendant is incompetent when he is in fact malingering . . . is subject to correction in a subsequent proceeding." *Id.* at 365. Moreover, the public has a strong interest in ensuring that courts carefully scrutinize a claim of incompetency to proceed to trial. *See* W.R. LAFAVE, CRIMINAL LAW § 1.2(e) at 13 (4th ed. 2003).

We agree with the above-cited federal common law that trial courts possess the inherent authority to order a second evaluation and competency hearing when there is evidence of malingering. The common law governing malingering is consistent with a plain and ordinary reading of RSA 135:17-a. *See* 15A AM. JUR. 2D *Common Law* § 12 (2000) (noting that "common law, to be part of the law of the state must not be inconsistent with the Federal constitution and laws, or the laws or political institutions of the state."). We conclude that RSA 135:17-a does not preclude a trial court from conducting necessary proceedings to determine whether a defendant is malingering. Accordingly, we hold that the trial court did not err by conducting such proceedings and that RSA 135:17-a provides no safe harbor for the artful malingerer.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and CONBOY, JJ., concurred.