Hillsborough-northern judicial district
No. 2012-083

THE STATE OF NEW HAMPSHIRE

v.

WILLIAM DECATO

Argued: May 9, 2013
Opinion Issued: August 28, 2013

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Stephanie Hausman*, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, William Decato, appeals his convictions, following a jury trial in Superior Court (*Brown*, J.), for aggravated felonious sexual assault, *see* RSA 632-A:2, I (2007) (amended 2012), attempted aggravated felonious sexual assault, *see id.*; RSA 629:1 (2007), kidnapping, *see* RSA 633:1 (2007), burglary, *see* RSA 635:1 (2007), and falsifying physical evidence, *see* RSA 641:6 (2007), on the ground that he was incompetent to stand trial. We affirm.

The jury could have found the following facts. On August 25, 2009, at around 10:00 p.m., the defendant broke into the victim's home through a window and encountered the victim asleep on her living room sofa. He put a cloth over her face and began to sexually assault her. As the victim struggled, the cloth fell from her face and she clearly saw the defendant, a man she had never seen before. She also saw, on a table by the sofa, a knife that was not hers. While the defendant was distracted, the victim grabbed the knife. The two struggled, and the defendant slapped and punched the victim in the face, while the victim stabbed the defendant in the neck.

The defendant remained in the victim's home for approximately two hours, assaulting and attempting to assault her numerous times in the living room, bathroom, and bedroom. The defendant's wound left blood inside and outside the house. Samples taken from the bathroom, living room, and bedroom were tested for DNA and the defendant was determined, to a reasonable degree of scientific certainty, to be the primary source of the DNA found. In addition, the defendant left his glasses and baseball cap at the scene of the crime. When the defendant left, he took the bedding from the victim's bed and other blood-stained items from the bathroom, which he then discarded in various places in the neighborhood.

Before trial, the defendant was evaluated by Dr. Daniel W. Comiskey, the New Hampshire Department of Corrections' chief forensic examiner. Thereafter, the defendant sought a ruling that he was incompetent to stand trial on the ground that he had no memory of the period during which the charged offenses took place, and, therefore, he could not communicate facts relevant to possible defenses to his counsel.

At the competency hearing, Dr. Comiskey testified that the defendant related that he had consumed eleven beers between 6:00 p.m. and 10:00 p.m. on the night of the charged offenses, and that he had no memory of events between 10:00 p.m. and 3:00 a.m. the next day, when he was found by police. The defendant reported one previous "blackout" he had experienced after drinking a considerable amount of alcohol. Dr. Comiskey concluded that the most likely explanation for the defendant's periods of amnesia was "consumption of a large amount of alcohol."

Dr. Comiskey testified that the defendant showed no "impairment in his functioning" or "cognitive problems" and showed no signs of experiencing a thought or mood disorder at any time during the interview. Dr. Comiskey further stated that the defendant, "in general[,] had a very good, factual understanding and rational understanding of the proceedings against him." In Dr. Comiskey's opinion, the defendant was competent to stand trial.

For purposes of the competency determination, the Trial Court (*Tucker*, J.) "accept[ed] that the defendant has amnesia with respect to the events in question." The court found, nevertheless, "that the State established by a preponderance of the evidence that the defendant has a rational as well as factual understanding of the proceedings against him, as well as a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" The court concluded that "[w]hatever the extent of the defendant's amnesia, it is not so severe as to affect his requisite understanding of the proceedings or the rationality of his discussions with counsel."

The defendant was tried before a jury and found guilty on nine counts of aggravated felonious sexual assault, four counts of attempted aggravated felonious sexual assault, one count of kidnapping, one count of burglary, and two counts of falsifying physical evidence.

On appeal, the defendant challenges the finding that he was competent to stand trial. We defer to the trial court's determination of competence unless we "conclude that no reasonable fact finder could have found as the trial court did." *State v. Moncada*, 161 N.H. 791, 798 (2011).

■ "A criminal defendant has a constitutional right not to be tried if he is legally incompetent." *State v. Gourlay*, 148 N.H. 75, 77 (2002). "The State bears the burden to prove, by a preponderance of the evidence, that a

defendant is competent to stand trial." *Moncada*, 161 N.H. at 795. We have adopted the two-pronged test for competency set forth by the United States Supreme Court in *Dusky v. United States*, 362 U.S. 402 (1960). *See State v. Champagne*, 127 N.H. 266, 270 (1985). That test requires that a defendant have: "(1) a sufficient present ability to consult with and assist his lawyer with a reasonable degree of rational understanding; and (2) a factual as well as rational understanding of the proceedings against him." *Moncada*, 161 N.H. at 794 (quotation omitted); *see Dusky*, 362 U.S. at 402.

The defendant's challenge relates only to the first prong of the competency test. To satisfy that prong, "the defendant must be able to communicate meaningfully with his attorney so as to be able to make informed choices regarding trial strategy." *Gourlay*, 148 N.H. at 77 (quotation omitted). "He must be sufficiently coherent to provide his counsel with the information necessary to construct a defense." *Id.* at 78.

We addressed amnesia in the competency context in *State v. Kincaid*, 158 N.H. 90 (2008), where we observed that a claim of amnesia "alone . . . does not automatically raise a bona fide or legitimate doubt triggering a due process right to a competency hearing." *Kincaid*, 158 N.H. at 94. We also noted, quoting the Ohio Supreme Court:

> "Although there are no definitive judicial explanations of what constitutes the ability to assist in one's own defense, . . . it is clear that the cases without exception reject the notion that an accused possesses that ability only if he is able to remember the circumstances of the crime with which he is charged."

*Id.* at 94-95 (quoting *State v. Brooks*, 495 N.E.2d 407, 413 (Ohio 1986)).

The defendant contends that the trial court erred in failing to "consider[ ] all relevant factors, identified by caselaw from other jurisdictions," in determining whether a loss of memory rendered the defendant incompetent. He then cites a litany of such factors considered by other courts. We decline, however, to adopt a specific factors test or, indeed, any rigid test that must be met whenever a defendant claims incompetency due to amnesia.

Here, the defendant meets the *Dusky* test. Dr. Comiskey testified that the defendant had "a good rational and factual understanding of the proceedings against him, better than most individuals referred for evaluation of competence. And certainly well above what I consider a threshold for consideration of incompetence to be." As to whether the defendant was able to assist his attorneys, Dr. Comiskey testified:

He is able to communicate rationally. He is able to think rationally. He is able to learn and retain new information. Those are abilities which I believe are relevant to being able to work with your attorneys, to communicate with them[,] to retain information, to think intelligently, and ask relevant questions, based on your conversations and discussions with them, and what information is of import, and the allegations against you, he has those abilities. He appears to be able to exercise those abilities well.

█ Dr. Comiskey's conclusions are not inconsistent with our law. As we observed in *Kincaid*, "[t]here are many ways a defendant can consult with and assist his trial counsel with a reasonable degree of rational understanding without necessarily remembering the details or circumstances of an event that led to his arrest." *Kincaid*, 158 N.H. at 94; *cf. Morrow*, 443 A.2d 108, 113 (Md. 1982) (stating the "view [that] the understanding required is [that of] the nature of the charge, the facts required to be proved to sustain the charge, and the consequences attending a conviction for having committed the charge" and observing that "[a]mnesia does not inhibit dialogue and discussion between attorney and client as to tactical decisions concerning the trial").

█ The defendant nevertheless argues that his amnesia prevented him from challenging the victim's version of events, or "from raising a mental state or consent defense." We disagree. We first note that the circumstantial evidence against the defendant, including his DNA and personal effects left at the scene of the crime, was very strong. Claims that "amnesia has prevented [the defendant] from raising any tenable defense" have failed where the evidence against the defendant was "both overwhelming and scientific in nature." *United States v. Andrews*, 469 F.3d 1113, 1121, 1120 (7th Cir. 2006).

The defendant argues, however, that although forensic evidence established his presence at the scene of the crime, "there was no forensic evidence as to the charged offenses." Rather, he asserts, the State's only evidence of the charged offenses consisted of the victim's testimony. The defendant does not, however, suggest any plausible explanation for his presence in the victim's home that an intact recollection of the time period at issue could supply. As the court stated in *United States v. Rinchack*, 820 F.2d 1557 (11th Cir 1987):

[W]hile we can never know for sure what [the defendant] might be able to remember if he did not suffer from amnesia, there does not appear to be any real possibility the amnesia is "locking in"

exculpatory information. There is no . . . suggestion that . . . the incriminating circumstantial evidence in this case has an innocent explanation.

*Rinchack*, 820 F.2d at 1570.

Given the strength of the circumstantial evidence against the defendant, we reject his argument that his inability to recall the time period of the charged offenses "prevented him from raising a . . . consent defense" or "challeng[ing] the [victim's] version [of events]." The circumstantial evidence included evidence of: forced entry into the victim's home; the documented stab wound to the defendant's neck that was still bleeding when the defendant was stopped by police in the early morning following the assault; the documented facial injuries to the victim; the victim's demeanor at the hospital following the assault; the removal of items from the victim's home following the assault; and the explanation given by the defendant to his examining physician for his neck injury — namely, that he fell — which the physician found implausible. The totality of this evidence corroborates the victim's story and belies a consent defense.

The defendant fares no better on his argument that his memory loss impaired his ability to raise a mental state defense. The very circumstance giving rise to the defendant's claim of amnesia, namely, severe intoxication, is the same as that underlying his argument that he lacked the requisite mental state to commit the charged crimes. The defendant vigorously advanced that argument at closing, and the jury was instructed that it could consider whether intoxication affected the defendant's "ability to form the requisite mental state." The defendant was able to highlight evidence that he had consumed eighteen beers on the night in question, and that his blood alcohol level eight hours after he went out that evening was at least .04. He was also able to argue that evidence that he failed to bandage his wound despite bleeding heavily, left a pair of glasses and a baseball cap in the victim's house, and scattered evidence around the neighborhood in plain sight, showed that he lacked awareness of what he was doing. The defendant has not demonstrated that his amnesia impaired his ability to argue that the State failed to prove he acted with the requisite mental states for the charged crimes.

We conclude that the defendant's amnesia did not render him incompetent.

*Affirmed.*

DALIANIS, C.J., and CONBOY, LYNN and BASSETT, JJ., concurred.