**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2013-0653, <u>State of New Hampshire v. Benjamin L. Duling, Sr.</u> the court on April 29, 2015, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The defendant, Benjamin L. Duling, Sr., appeals his conviction by a jury on alternate counts of second degree murder. <u>See</u> RSA 630:1-b (2007). On appeal, he argues that the Superior Court (<u>Nicolosi</u>, J.) erroneously: (1) concluded that his amnesia did not render him incompetent to stand trial; (2) allowed the State to display repeatedly photographs and videos of the victim's dead and bloody body; (3) found certain evidence inadmissible; (4) ruled that a defense witness was not qualified to testify as an expert; (5) did not allow defense counsel's closing argument to exceed 80 minutes; and (6) instructed the jury. We affirm.

The jury could have found the following facts. The defendant, the victim, and their two young children were scheduled to leave for a London vacation on April 19, 2008. On the evening of April 18, 2008, the defendant and the victim argued. During the argument, the defendant grabbed a knife from the victim and stabbed her in the neck and back. The defendant was charged with alternate counts of knowing and reckless second degree murder, and, following a six-day jury trial, was convicted of both charges. This appeal followed.

I. Competency Determination

The trial court evaluated the defendant's competency both before and after trial. Before trial, the court found that, although the defendant has amnesia, it did not render him incompetent because, despite his lack of memory about the actual moment of the victim's stabbing, he had "other tools at his disposal in formulating [his] defense." The court observed that the defendant "does have a memory of the tumultuous nature of his relationship with [the victim], particularly in the days leading up to the incident." The court also found that the defendant "is aware of [the victim's] character for violence," his own character for violence, "his feelings for [the victim]," and whether "he desired to harm her in the past." The court further found that the defendant is "able to recall much of the day of April 18, 2008," and that his recall "combined with the physical evidence and the context of his relationship [might] lead to a successful justification or provocation defense."

The court determined that, although the defendant's amnesia might "present challenges to constructing a defense," he could "work with his lawyers and evaluate his chances at trial based on the evidence . . . presented by both sides." The court found that he had the ability to "decide whether to testify in order to explain the relationship he had with [the victim] and the circumstances leading to and following the ultimate confrontation" and could "provide his lawyers background about [the victim] in order to focus an investigation." The court also found that the defendant had the capacity "to decide whether to go to trial or engage in a plea bargain based on his lawyers' and his evaluation of the available evidence."

After trial, the court confirmed its competency determination based, in part, upon its observations of the defendant during trial. For instance, the court observed that the defendant "was able to rationally evaluate the evidence with his attorney and consult with counsel" about strategic decisions, such as moving to exclude all evidence and argument about his amnesia. The court also observed that, during trial, the defendant "was attentive, wrote notes and communicated with his lawyer, and appeared actively involved as the evidence developed."

Although defense counsel argued that, because of the defendant's amnesia, it was "impossible" for him to testify, the court disagreed. The court found that he could have testified "as to what he did know, what he felt about [the victim], the events leading up to the killing, his feelings and actions before and after, his character and hers for violence, etc." The court noted that the defendant could have explained his amnesia to the jury.

The court observed that, during the course of the trial, "the defendant presented several alternative and viable defenses to the State's allegations." The court noted that defense counsel "extensively cross-examined the State's medical examiner" and that he argued to the jury in his closing argument that the defendant "had acted in self-defense or had not formed the requisite mental state to convict him of second degree murder." The court stated, "Not only did defense counsel cross-examine the State's witnesses based on his theory of defense, he also presented several witnesses on the defendant's behalf in order to further his assertion of self-defense and/or his mens rea defense."

Moreover, although the defendant argued that "he was prejudiced by his inability to knowingly enter an Alford plea," the court found this claim did not appear genuine and was not timely made. See North Carolina v. Alford, 400 U.S. 25 (1970). The court observed that there was "no indication whatsoever that the defendant ever sought to negotiate or considered negotiating an Alford plea with the help of any [of] his lawyers." Indeed, the court noted, "the letters between counsel concerning pre-trial negotiations include the defendant's offer to plead guilty in exchange for certain concessions by the State, without limitation on his ability to admit guilt." The court stated that all of the letters

2

"from <u>both</u> current and former defense counsel indicate that the defendant authorized the enclosed offer."

On appeal, the defendant argues that his amnesia rendered him "unable to meaningfully plea bargain [or] take the stand." He further contends that, because of his amnesia, "he could not begin to mount any viable form of <u>mens rea</u> defense, . . . [and] could not effectively challenge prosecution witnesses, . . . or the flood of prosecutorial inferences of his guilt." Accordingly, he contends, the trial court erred when it found him competent to stand trial.

A criminal defendant has a constitutional right not to be tried if he is legally incompetent. <u>State v. Decato</u>, 165 N.H. 294, 296 (2013). The State has the burden of proving, by a preponderance of the evidence, that a defendant is competent to stand trial. <u>Id</u>. at 296-97. Our two-pronged test for competency, which is based upon the test set forth in <u>Dusky v. United States</u>, 362 U.S. 402 (1960), requires that a defendant have: "(1) a sufficient present ability to consult with and assist his lawyer with a reasonable degree of rational understanding; and (2) a factual as well as rational understanding of the proceedings against him." <u>Id</u>. at 297 (quotation omitted); <u>see</u> <u>Dusky</u>, 362 U.S. at 402; <u>see</u> <u>also</u> RSA 135:17, II (Supp. 2014). The defendant challenges only the first prong of the competency test.

To satisfy the first prong of the competency test, "the defendant must be able to communicate meaningfully with his attorney so as to be able to make informed choices regarding trial strategy." <u>Decato</u>, 165 N.H. at 297 (quotation omitted). "He must be sufficiently coherent to provide his counsel with the information necessary to construct a defense." <u>Id</u>. (quotation omitted). We defer to the trial court's determination of competence unless we conclude that no reasonable fact finder could have found as the trial court did. <u>Id</u>. at 296.

We have previously concluded "that a defendant can consult with and assist his trial counsel with a reasonable degree of rational understanding without necessarily remembering an event." <u>State v. Kincaid</u>, 158 N.H. 90, 94 (2008). Thus, we have rejected the notion that an accused possesses the ability to assist his attorneys only if he is able to remember the circumstances of the crime with which he is charged. <u>Id</u>. at 94-95; <u>see</u> <u>Decato</u>, 165 N.H. at 297.

The defendant has failed to provide a sufficient record for any further review of the trial court's competency determination. Specifically, the defendant has not provided copies of the evaluations conducted by a number of forensic experts, even though those evaluations were admitted as exhibits at the pretrial competency hearing. It is the burden of the appealing party, here the defendant, to provide this court with a record sufficient to decide his issues on appeal. <u>See</u> <u>Bean v. Red Oak Prop. Mgmt.</u>, 151 N.H. 248, 250 (2004). Because our rules affirmatively require the moving party both to provide a

sufficient record on appeal and to demonstrate where each question presented on appeal was raised in the trial court, see Sup. Ct. R. 13, 16(3)(b), failure of the moving party to comply with these requirements may be considered by the court regardless of whether the opposing party objects on those grounds. Bean, 151 N.H. at 250.

Without a sufficient record, we must assume that the evidence supports the trial court's factual findings. See id. Our review is limited to questions of law. See Rix v. Kinderworks Corp., 136 N.H. 548, 553 (1992). Having failed to persuade us that the trial court's competency determination is legally erroneous, we uphold that determination.

II. Trial Court Decisions on Evidentiary Matters

We review challenges to a trial court's evidentiary rulings under our unsustainable exercise of discretion standard and reverse only if the rulings are clearly untenable or unreasonable to the prejudice of a party's case. State v. Costella, 166 N.H. 705, 714 (2014). "In determining whether a ruling is a proper exercise of judicial discretion, we consider whether the record establishes an objective basis sufficient to sustain the discretionary decision made." Id. (quotation omitted). "The defendant bears the burden of demonstrating that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case." Id. (quotation omitted).

The defendant first argues that the trial court erred when it allowed the State to display to the jury photos and videos of the victim's dead and bloody body. However, he has failed to provide a sufficient record for our review of this issue. Although the record on appeal includes his motion in limine, it does not include a transcript of the hearing on the motion. Nor does it include the trial court's pretrial ruling on the motion. Without a sufficient record, we must assume that the evidence supports the trial court's factual findings. Bean, 151 N.H. at 250. Having failed to persuade us that the trial court's decision was legally erroneous, we uphold it. See Rix, 136 N.H. at 553.

The defendant next argues that the trial court's decision concerning the testimony of nine defense witnesses was erroneous. Rather than specifically address the trial court's rulings with respect to each witness, "the defendant respectfully asks this Court to . . . address each in turn, from the attached . . . lower court Order, and in the context of . . . [his] brief argument." (Quotation omitted.) We decline his invitation to do so and consider his argument insufficiently developed for our review. See State v. Letoile, 166 N.H. 269, 278 (2014).

The defendant next challenges the trial court's determination that one of his witnesses was unqualified to testify as an expert. However, he again has failed to provide a sufficient record for our review of this issue. The defendant

4

has not provided a copy of the witness's report or a copy of the witness's deposition, both of which are referenced by the trial court in its order. Without a sufficient record, we must assume that the evidence supports the trial court's factual findings. See Bean, 151 N.H. at 250. Because the defendant has failed to persuade us that the trial court's decision was legally erroneous, we uphold it. See Rix, 136 N.H. at 553.

III. Plain Error

The defendant raises two issues under our plain error rule. See Sup. Ct. R. 16-A. Under the plain error rule, we may consider errors not raised in the trial court. State v. Guay, 164 N.H. 696, 703 (2013). The rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. Id. at 704. Our plain error rule sets forth four requirements: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity, or public reputation of the judicial proceedings. Id.

The defendant first argues that the trial court committed plain error when it allowed defense counsel to argue for 80 minutes, but no more. We disagree that this was error. The applicable court rule limits closing arguments "to one hour each, unless otherwise ordered by the Court in advance." Super. Ct. Crim. R. 71. Absent any evidence that the trial court ordered that the parties' closing arguments could exceed one hour, we find no error in the decision to limit defense counsel's closing argument to no more than an hour and 20 minutes. Although, on appeal, the defendant cites various constitutional provisions, such "offhand invocations" of constitutional rights supported by neither argument nor authority warrant no extended consideration. Keenan v. Fearon, 130 N.H. 494, 499 (1988).

The defendant next asserts that the trial court committed plain error when it misspoke while instructing the jury. The State concedes that the trial court so erred, but argues that the error does not require reversal. We agree.

"The purpose of the trial court's charge is to state and explain to the jury, in clear and intelligible language, the rules of law applicable to the case." State v. Etienne, 163 N.H. 57, 70 (2011) (quotation omitted). "When reviewing jury instructions, we evaluate allegations of error by interpreting the disputed instructions in their entirety, as a reasonable juror would have understood them, and in light of all the evidence in the case." Id. (quotation omitted). "We determine whether the jury instructions adequately and accurately explain each element of the offense and reverse only if the instructions did not fairly cover the issues of law in the case." Id. (quotation omitted). "Whether a particular jury instruction is necessary, and the scope and wording of jury instructions, are within the sound discretion of the trial court, and we review the trial court's decisions on these matters for an unsustainable exercise of

5

discretion." Id. (quotation omitted). "To show that the trial court's decision is not sustainable, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." Id. (quotation omitted).

The trial court misspoke when instructing the jury about circumstantial evidence:

> There are two types of evidence, direct and circumstantial.
>
> Direct evidence is direct proof of a fact, such as the testimony of an eye-witness, or a witness who has the information based upon his or her own personal knowledge. So that is, a witness, saw, heard, or otherwise directly experienced.
>
> Circumstantial evidence is indirect evidence that tends to prove a fact disputed by facts – by the proof of other facts.
>
> So the classic example of direct and circumstantial evidence to distinguish them is as follows:
>
> So imagine you're in a library. You decide you're going to go to read some books, and as you head to the library it's sunny out, and you go in and you go into a room that has no windows. You can't see anything to the outside. And as you've been sitting there, after about an hour, somebody comes in, they're wearing a raincoat, they're dripping wet, and they have an umbrella in their hand. Based on that, you could infer, based on that circumstantial evidence, that it's raining outside, even though you haven't directly experienced it.
>
> That would be opposed to something where you're walking into the library and it's raining. You feel the rain, you see the rain, that's direct evidence.
>
> There's no distinction on the weight to be given either direct or circumstantial evidence. It's for you to decide how much weight to give any evidence, whether it be direct or circumstantial.
>
> However, if you rely solely on circumstantial evidence and reach a conclusion that the Defendant is guilty, for that circumstantial evidence to be sufficient to establish guilt beyond a reasonable doubt, the circumstantial evidence must exclude all other rational conclusions other than guilt.

6

This mean[s] that if, from the circumstantial evidence, it is rational to arrive at two conclusions, one rational conclusion consistent with <u>evidence</u>, and one rational conclusion consistent with guilt, you must choose the rational conclusion that is consistent with innocence.

However, you do not need to consider each item of circumstantial evidence in isolation in determining whether all rational conclusions, other than guilt, have been excluded, and in deciding this case. You should consider each item of circumstantial evidence in the context of all of the other direct and circumstantial evidence that you've heard.

(Emphasis added.)

Although the trial court may have inadvertently said, "one rational conclusion consistent with evidence," instead of "one rational conclusion consistent with innocence," we conclude that this error did not affect the defendant's substantial rights. See <u>United States v. Ancheta</u>, 38 F.3d 1114, 1117 (9th Cir. 1994); <u>see</u> <u>also</u> <u>Richardson v. Finn</u>, No. 2:06-cv-01731 ALA (HC), 2008 WL 4952554, at *12-13 (E.D. Cal. Nov. 18, 2008). The instructions as a whole were not plainly erroneous. Moreover, the trial court provided the jury with written instructions that the State contends, and the defendant does not dispute, properly instructed the jury. Additionally, the absence of any defense objection during the trial court's jury instructions "suggests that the mistake was not noticeable or confusing." <u>Ancheta</u>, 38 F.3d at 1117. Under these circumstances, "there is no reason to suppose that any juror was confused by the judge's slip of the tongue." <u>Id</u>. The jury probably understood the judge to say "orally what [she] meant to say and did say in the written instructions." <u>Id</u>. Thus, we hold that the trial court's misstatement did not affect the defendant's substantial rights. See <u>Guay</u>, 164 N.H. at 704.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,**
**Clerk**

7