NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-southern judicial district
No. 2018-0318

THE STATE OF NEW HAMPSHIRE

v.

MOHAMMAD SALIMULLAH

Argued:  October 10, 2019
Opinion Issued:  January 10, 2020

Gordon J. MacDonald, attorney general (Susan P. McGinnis, senior assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HANTZ MARCONI, J.  A jury convicted the defendant, Mohammad Salimullah, on one count of attempted murder, see RSA 629:1 (2016), two counts of first degree assault, see RSA 631:1, I (2016), one count of second degree assault, see RSA 631:2, I (2016), and one count of reckless conduct, see RSA 631:3, I (2016).  He appeals: (1) an order of the Superior Court (Ignatius, J.) denying his motion to dismiss on the grounds that the State failed to comply with RSA 135:17-a (2015) (amended 2019) in bringing indictments against him in 2016; (2) an order of the Superior Court (Smukler, J.) denying his motion for a competency determination prior to sentencing; and (3) an order of the Superior Court (Smukler, J.) imposing a no-contact condition on a

stand-committed sentence.  We reverse the imposition of the no-contact
condition, but otherwise affirm.

I

A

The jury could have found the following facts.  The defendant and the
victim, S.S., were married in 2007.  On the evening of August 12, 2013, the
defendant and S.S. discussed S.S.'s desire for a divorce.  Later that night or
early the next morning, while S.S. was asleep, the defendant attacked her with
a knife.  After S.S. managed to escape, the defendant sat down on the floor and
stabbed himself in the stomach.  Both S.S. and the defendant survived, but not
without sustaining injuries.

B

The defendant was originally indicted in October 2013.  Two doctors
evaluated his competency to stand trial; both concluded he was not competent.
In September 2014, the Superior Court (McGuire, J.) found, by agreement of
the parties, that "[t]he defendant is not presently competent," but that his
"competency [was] potentially restorable."  The court ordered the defendant to
undergo treatment for the restoration of competency "at a secure facility," and
stated that the defendant "shall be held at the secured facility."  In addition,
the court stated that "the State shall commence with the procedures set forth
in RSA 135-C:34 to have the defendant civilly committed."

The defendant was civilly committed by the Probate Division of the
Circuit Court in October 2014.  The civil commitment was to last for a period of
up to three years.  He was committed to the Secure Psychiatric Unit (SPU) of
the New Hampshire State Prison, where he received treatment to restore
competency.

In September 2015, twelve months after the defendant was found
incompetent, the Superior Court (Colburn, J.) found that the defendant had
not been restored to competency.  Accordingly, the court dismissed the
defendant's case "without prejudice."  Then, in November 2015, the defendant
was transferred from the SPU to the New Hampshire State Hospital.  Hospital
staff began working with him on a discharge plan, which involved housing,
medication, and other conditions.  Prior to his eventual release from the
hospital at the conclusion of his civil commitment, the Hospital planned to
grant the defendant increasingly greater privileges, such as the ability to leave
the hospital building.

In January 2016, the State obtained new indictments bringing the same
charges that had been dismissed without prejudice four months earlier.  The
defendant's arraignment on the new indictments was scheduled to take place

in February 2016. At the February hearing, the defendant orally moved to dismiss the indictments before arraignment, arguing that the State could not reinitiate criminal proceedings against him unless it demonstrated "that there's reason to believe that he has been restored to competency." The trial court initially ruled, at the hearing, that it would not proceed with arraignment, but ultimately denied the defendant's motion in a written order.

At his subsequent arraignment, the defendant informed the court that he planned to file a motion for a new competency evaluation. In response, the court issued an order for a new competency evaluation. The defendant then underwent three competency evaluations. After a hearing, the Superior Court (Colburn, J.) ruled that the defendant was competent to stand trial.

After the defendant was found guilty, but prior to sentencing, he filed a motion for an additional competency determination. Defense counsel stated that he had a "legitimate doubt . . . as to [the defendant's] competency with respect to sentencing." The State objected. The trial court denied the motion and sentenced the defendant. This appeal followed.

II

The defendant first argues that the trial court erred in denying his motion to dismiss the 2016 indictments. He contends that "RSA 135:17-a sets forth prerequisites for reevaluating the competency of a defendant who has previously been found incompetent and either unrestorable or unrestored." Specifically, he points to paragraph VI of that statute, which states that the court may order further competency evaluations of persons who, like the defendant, have been involuntarily committed pursuant to RSA chapter 135-C "if the court finds that there is a reasonable basis to believe that the person's condition has changed such that competency to stand trial may have been affected." RSA 135:17-a, VI. The defendant argues that, by denying his motion to dismiss the 2016 indictments, the court allowed the State to "circumvent[]" this requirement. He also argues that the trial court incorrectly interpreted this court's opinion in State v. Demesmin, 159 N.H. 595 (2010), and that the court further erred in finding RSA 135:17-a, VI ambiguous as to the court in which the State must move for a reevaluation of the defendant's competency.

The defendant's arguments require us to engage in statutory interpretation. The interpretation of a statute is a question of law, which we review de novo. State v. Folds, 172 N.H. 513, 521 (2019). This court is the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. Id. When interpreting a statute, we look first to the language of the statute itself, and, if possible, construe the language according to its plain and ordinary meaning. Id. We construe all parts of a statute together to effectuate its overall purpose and to avoid absurd or unjust results. State v. Keenan, 171 N.H. 557, 561 (2018). Moreover, we do not read

3

words or phrases in isolation, but in the context of the entire statutory scheme. Folds, 172 N.H. at 521.

"RSA 135:17-a lays out the procedures a trial court should follow after making an initial determination that the defendant is not competent to stand trial." Demesmin, 159 N.H. at 599. For example, the statute provides that, after finding a defendant incompetent to stand trial, "the court shall order treatment for the restoration of competency unless it determines, by clear and convincing evidence, that there is no reasonable likelihood that the defendant can be restored to competency through appropriate treatment within 12 months." RSA 135:17-a, I. It further provides that the court may order that treatment take place "in the state mental health system or at the secure psychiatric unit only under an order for involuntary admission or involuntary emergency admission . . . pursuant to RSA 135-C." RSA 135:17-a, II. "In all other cases, the accused shall, if otherwise qualified, be admitted to bail," pursuant to which the court "may order bail supervision . . . and impose . . . conditions, in addition to the appropriate course of treatment to restore competency." Id. "Except for good cause shown," the court is required to hold "a further hearing to determine the defendant's competency . . . no later than 12 months after the order committing the defendant for treatment." RSA 135:17-a, III.

The statute requires the court to dismiss the case against the defendant in two circumstances. See RSA 135:17-a, I, IV. If, after its initial determination that the defendant is not competent to stand trial, the court further finds, by clear and convincing evidence, that the defendant cannot be restored to competency within twelve months, "the case against the defendant shall be dismissed without prejudice." RSA 135:17-a, I. In addition, if, following the hearing to reassess the defendant's competency after he has undergone restoration treatment, the court determines that the defendant has not regained competency, "the case against the defendant shall be dismissed without prejudice." RSA 135:17-a, IV; see RSA 135:17-a, III. The statute does not purport to give the court the authority to dismiss a defendant's case with prejudice, however. See RSA 135:17-a.

The statute provides that the court retains authority to order further competency evaluations even after a defendant's case is dismissed. Specifically, if the court dismisses a defendant's case "and the court determines that he or she is dangerous to himself or herself or others, the court shall order the person to remain in custody for a reasonable period of time . . . to be evaluated for the appropriateness of involuntary treatment pursuant to RSA 135-C:34 or RSA 171-B:2." RSA 135:17-a, V; see RSA 135:17-a, I, IV. Then, if the person is involuntarily committed pursuant to RSA chapter 135-C or RSA chapter 171-B, "the court may, upon motion of the attorney general or county attorney at any time during the period of involuntary commitment and before

4

expiration of the limitations period applicable to the underlying criminal offense, order a further competency evaluation." RSA 135:17-a, VI. "Such further competency evaluations may be ordered if the court finds that there is a reasonable basis to believe that the person's condition has changed such that competency to stand trial may have been affected." Id.

It is this provision of RSA 135:17-a, VI upon which the defendant primarily relies. According to the defendant, it is a "prerequisite" to the court's reevaluation of "the competency of a defendant who has been found incompetent and either unrestorable or unrestored" that the court find, pursuant to paragraph VI of the statute, that there is a reasonable basis to believe the defendant's condition has changed such that his competency may have been affected. The defendant argues that "the State circumvented [this] requirement[] by obtaining new indictments." In essence, the defendant argues that the State was precluded from reinstituting the case against him unless and until this statutory "prerequisite" for ordering further competency evaluations was satisfied. We are not persuaded.

As an initial matter, we note that RSA 135:17-a provides only for dismissal of a defendant's case "without prejudice." RSA 135:17-a, IV; accord RSA 135:17-a, I. Subject to constitutional and statute of limitations issues, a dismissal without prejudice "does not preclude the state from filing charges— even the same ones—at a later time." State v. Smith, 960 A.2d 993, 1005 (Conn. 2008); see also Keeling v. Com., 381 S.W.3d 248, 258-59 (Ky. 2012) (holding that, because trial court's dismissal of indictment on competency grounds was without prejudice, "[t]he Commonwealth was free to re-indict [the defendant], and the trial court properly denied his motion to dismiss the [new] indictment"). The trial court's 2015 order dismissing the defendant's case expressly states that the dismissal was "without prejudice." These considerations support the trial court's decision to deny the defendant's motion to dismiss on RSA 135:17-a grounds. See Smith, 960 A.2d at 1005; Keeling, 381 S.W.3d at 259.

Furthermore, construing the statute as a whole, "RSA 135:17-a lays out the procedures a trial court should follow after making an initial determination that the defendant is not competent to stand trial." Demesmin, 159 N.H. at 599 (emphasis added). We find nothing in the statute relating to the procedures that the State must follow in reinstituting criminal charges against a defendant that a court has deemed incompetent and either unrestored or unrestorable. See State v. Woodbury, 172 N.H. 358, 366 (2019) ("We interpret legislative intent from the statute as written and will not . . . add language that the legislature did not see fit to include."); see also People v. Zapotocky, 869 P.2d 1234, 1242-43 (Colo. 1994) (en banc) (concluding that it is generally the legislature's prerogative to determine when criminal charges against incompetent defendants should be dismissed); State ex rel. Haskins v. County Court of Dodge County, 214 N.W.2d 575, 584 (Wis. 1974) (same). The

5

provision in RSA 135:17-a, VI regarding whether there is a "reasonable basis" to believe the defendant's condition has changed such that his competency may have been affected relates to whether the court may order "further competency evaluations" of persons who have been involuntarily committed pursuant to RSA chapter 135-C or RSA chapter 171-B. RSA 135:17-a, VI. By the statute's plain text, this provision concerns only a trial court's authority to order a competency evaluation; it is not a limitation on the State's ability to reindict a defendant whose case has been dismissed without prejudice pursuant to RSA 135:17-a, I or IV. See Woodbury, 172 N.H. at 366.

Although we reject the notion that RSA 135:17-a, VI prohibits the State from reindicting a defendant whose case has been dismissed pursuant to paragraph I or IV before satisfying the requirements for obtaining a new competency evaluation under paragraph VI, we do not mean to suggest that, merely by reindicting such a defendant, the State is relieved from the requirements of the statute. As discussed, the statute contemplates that the court may order further competency evaluations of a person whose case has been dismissed pursuant to paragraph I or IV only if the court finds there is reason to believe that the person may have regained competency. See RSA 135:17-a, VI. Thus, an incompetent defendant remains presumptively incompetent even after his case is dismissed. See id; see also Molina v. State, 946 So. 2d 1103, 1105 (Fla. Dist. Ct. App. 2006) ("Once found incompetent, a presumption clings to the criminal defendant that the state of incompetence persists until a court, after proper notice and a hearing, finds otherwise."). While the statute does not prohibit the State from reindicting such a defendant, neither does it provide that reinstatement of the indictments extinguishes the presumption of incompetency. See RSA 135:17-a; see also Keeling, 381 S.W.3d at 259. In other words, regardless of whether the State reindicts, if the State seeks to relitigate the competency of a person, like the defendant, whose case has been dismissed pursuant to RSA 135:17-a, I or IV, and who has been involuntarily committed pursuant to RSA chapter 135-C or RSA chapter 171-B, it must demonstrate, and the court must find, that "there is a reasonable basis to believe that the person's condition has changed such that competency to stand trial may have been affected." RSA 135:17-a, VI.

The defendant suggests that, by denying his motion to dismiss, the court improperly allowed the State to "automatically" obtain a new competency evaluation even though the court had not found there was any reason to think his competency status had changed. However, we construe the trial court's orders differently than the defendant does. See In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008) ("The interpretation of a court order is a question of law, which we review de novo."). As noted above, the State obtained new indictments in January 2016, and the defendant was scheduled to be arraigned on those indictments in February. At the February hearing, the defendant raised his RSA 135:17-a argument in an oral motion to dismiss prior to arraignment. The court did not grant the defendant's motion, but it did rule

6

that, "in an abundance of caution," it would "not go forward with the arraignment [that] morning." The court further ruled that it would issue an order to the New Hampshire Hospital directing it to disclose certain of the defendant's records to the State and to defense counsel, and that, if the State believed after reviewing the defendant's records "that there may be a change in [the defendant's] competency status, then [the State] can seek a further competency evaluation."

In a subsequent written order, the court reconsidered its decision not to go forward with arraignment, and ordered instead that "the defendant shall be arraigned on the new felony indictments." The court's written order did not, however, depart from its prior ruling directing the State to seek a further competency evaluation if it believed the defendant's competency status may have changed. To the contrary, the court's order envisioned that the State would still "petition for re-evaluation under RSA 135:17-a, VI" after the defendant's arraignment, and stated that the defendant was "free to file a written motion to dismiss for consideration after arraignment." Despite the court's order, however, the defendant stated at his subsequent arraignment that he would be filing a motion for a competency evaluation. In response to the defendant's representations, the court stated that it would order a competency evaluation. In these circumstances, we do not agree with the defendant that the trial court's denial of his motion to dismiss improperly allowed the State to obtain a new competency evaluation without demonstrating there was reason to think the defendant's competency status had changed.

In sum, we conclude that the trial court did not err in denying the defendant's motion to dismiss the 2016 indictments.[1] In so doing, we do not mean to suggest that the State will <u>always</u> be free to reindict a defendant who has been found incompetent and either unrestored or unrestorable, and whose case has been dismissed pursuant to RSA 135:17-a. "A dismissal of criminal charges without prejudice does not imply their automatic reimposition. In fitting circumstances, such a defendant would doubtless, as a matter of elemental fairness and due process, be protected from any attempt to renew the prosecution against him, notwithstanding an earlier dismissal of the indictment without prejudice." <u>State v. Gaffey</u>, 456 A.2d 511, 517 (N.J. 1983); see <u>State v. Davis</u>, 898 N.E.2d 281, 283, 285 (Ind. 2008) (concluding that "it is a violation of fundamental fairness to hold criminal charges over the head of an incompetent defendant who will never" regain competency); <u>Sharris v. Commonwealth</u>, 106 N.E.3d 661, 664 (Mass. 2018) (concluding that "maintaining pending charges against an incompetent defendant" who will never regain competency in circumstances "where maintaining the charges does not serve the compelling State interest of protecting the public" violated

---

[1] In light of our conclusion, we need not address the defendant's arguments regarding the trial court's interpretation of <u>Demesmin</u> or its conclusion that RSA 135:17-a is potentially ambiguous.

defendant's substantive due process rights).  In addition, "[d]ismissal of the charges for lack of speedy trial may also be appropriate," depending upon the specific facts of the case.  Zapotocky, 869 P.2d at 1243; see, e.g., State v. Stow, 136 N.H. 598, 602 (1993).  Here, however, the defendant's challenge to the 2016 indictments raised no such grounds.

III

The defendant next argues that the trial court erred in denying his request for a competency determination prior to sentencing.  Specifically, he argues that the court erred in finding that no bona fide doubt existed as to whether he was competent at the time of sentencing and, in so doing, violated his due process rights.  We first address the defendant's argument under the State Constitution and rely upon federal law only to aid our analysis.  See State v. Ball, 124 N.H. 226, 231-33 (1983).

The mental competence of a criminal defendant is an absolute basic condition of a fair trial.  State v. Zorzy, 136 N.H. 710, 714 (1993).  Due process guarantees under both the Federal and State Constitutions protect defendants from standing trial if they are legally incompetent.  State v. Kincaid, 158 N.H. 90, 93 (2008).  This right applies "at all stages of prosecution, including sentencing."  United States v. Rickert, 685 F.3d 760, 765 (8th Cir. 2012); accord, e.g., United States v. Pellerito, 878 F.2d 1535, 1544 (1st Cir. 1989); see Hart v. Warden, N.H. State Prison, 171 N.H. 709, 724 (2019) (noting that a defendant's competency to stand trial "may be challenged at any time during the prosecution of a defendant").

The test for competency, as formulated by the United States Supreme Court in Dusky v. United States, 362 U.S. 402, 402 (1960), and adopted by this court, is two-pronged.  Kincaid, 158 N.H. at 93; see Hart, 171 N.H. at 727.  First, the defendant must have a sufficient present ability to consult with and assist his lawyer with a reasonable degree of rational understanding.  Kincaid, 158 N.H. at 93.  Second, the defendant must have a factual as well as rational understanding of the proceedings against him.  Id.  The State bears the burden to prove, by a preponderance of the evidence, that a defendant is competent to stand trial.  State v. Decato, 165 N.H. 294, 296-97 (2013).

The right not to be tried while incompetent is further protected by the constitutional requirement that a trial court must, on its own initiative, order an evidentiary hearing on the issue of competency whenever a bona fide or legitimate doubt as to competency arises.  Zorzy, 136 N.H. at 714-15; State v. Bertrand, 123 N.H. 719, 725 (1983).  In determining whether a bona fide or legitimate doubt exists with regard to a defendant's competency, the trial court should consider numerous factors, including evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competency.  Kincaid, 158 N.H. at 93.  When a trial court has before it only a

8

tentative speculation that the defendant is incompetent, it need not order an evidentiary hearing. Id. In addition, a trial record void of any indication that the defendant could not assist in his defense, or rationally comprehend the nature of the proceedings, provides substantial evidence of the defendant's competence. Id.

This list of factors, however, is not exclusive. Id. A trial court should exercise its discretion based upon the particular facts and circumstances of the case before it and order a competency hearing as it deems necessary, in order to uphold a defendant's right to due process. Id. As the trial court is in the best position to evaluate a criminal defendant's behavior, we review its decision for an unsustainable exercise of discretion. See id. at 93, 95.

The defendant argues that the trial court erred in finding that no bona fide or legitimate doubt as to his competency existed at the time of sentencing. From our review of the record, and given the deference we accord the trial court's decision, we cannot say that the court erred in this regard.

As noted above, the defendant underwent multiple competency evaluations after he was arraigned on the 2016 indictments. The evaluations were performed by two doctors: one retained by the State, and one retained by the defendant. The State's expert concluded that the defendant was competent to stand trial and that he was "malingering," i.e., faking or exaggerating his symptoms. Significant to the expert's conclusion were the defendant's claims that he had no memory about the alleged attack on his wife or the events leading to his arrest. According to the State's expert, who had also evaluated the defendant's competency in 2014, the defendant began claiming memory loss only after the charges against him were reinstated. The State's expert also administered several tests designed to identify malingering; the results of each test supported the conclusion that the defendant was exaggerating or faking his symptoms. The court held a competency hearing prior to trial, at which it heard testimony from both doctors. The court credited the State's evaluation over the defendant's, specifically credited the conclusion that "the results of the administered tests show either a lack of effort by the defendant or an outright attempt to feign impairment," and found the defendant competent. Thus, the record contains "prior medical opinion on competency" that supports a conclusion that the trial court sustainably exercised its discretion in concluding that no bona fide doubt existed as to whether the defendant was competent at the time of sentencing. Kincaid, 158 N.H. at 93 (quotation omitted).

Furthermore, the record provides no indication that the defendant could not rationally comprehend the nature of the proceedings. See id. To the contrary, the trial court found that the defendant made the "volitional decision" at the sentencing hearing "to rip up the sentence review form in open court." This indication that the defendant was upset with his sentence, or with the

sentencing proceeding itself, supports the notion that there was not a bona fide doubt as to whether the defendant lacked "a factual [or] rational understanding of the proceedings" at the time of sentencing. Id. (quotation omitted). Furthermore, the judge that decided the defendant's motion for a competency determination also presided over the defendant's four-day trial as well as jury selection. The court did not note that the defendant's behavior at these proceedings provided a basis to doubt his competence. See id.

The defendant argues that, even if he was competent throughout trial, "there was nothing speculative about the possibility that . . . the trial and guilty verdicts rendered him temporarily incompetent to be sentenced." The defendant notes that both the State's expert as well as his own expert diagnosed him with depression. The defendant argues that he had reached a level of despondency after trial such that there were bona fide concerns that he was no longer competent. To support his contention, the defendant notes that the only sentence he authorized defense counsel to seek was life without parole, which was "well above the State's recommendation."

The trial court did not agree that the extent of the defendant's depression raised a bona fide doubt as to competency, observing that "feelings of depression and resignation on the eve of sentencing for a crime as serious as attempted murder are abundantly rational under the circumstances." The court also highlighted the extensive mitigating evidence presented by defense counsel during the sentencing hearing, much of which was highly personal and specific to the defendant's life, which belied the notion that the defendant had been unable to assist his counsel in preparing for sentencing. From our review of the record, we cannot say the court unsustainably exercised its discretion in concluding that neither the defendant's depression nor the sentence he authorized defense counsel to seek raised a bona fide doubt as to his competency at the time of sentencing.[2]

In sum, the trial court did not unsustainably exercise its discretion in denying the defendant's motion for a competency determination prior to sentencing. Because the State Constitution provides at least as much protection as the Federal Constitution under these circumstances, see

---

[2] The defendant also argues that "the court's denial of [his] request for a new competency evaluation was particularly unsustainable given its previous ruling that the State could obtain a new competency evaluation merely by reindictment, with no showing of any changed circumstance." He further argues that "[t]his combination of rulings creates a double-standard: a finding of incompetency can be relitigated at the prosecutor's whim, but a finding of competency can only be revisited if the defendant makes a unique, heightened showing." We do not agree with the premise of the defendant's position. As noted above, the court's denial of the defendant's motion to dismiss did not permit the State to "obtain a new competency evaluation merely by reindictment"; rather, the court's order contemplated that the State would petition for a new competency evaluation under RSA 135:17-a, VI after the defendant was arraigned on the new indictments.

10

Bertrand, 123 N.H. at 725; Drope v. Missouri, 420 U.S. 162, 172-73 (1975), we reach the same result under the Federal Constitution as we do under the State Constitution.

IV

The defendant's final argument is that the court erred in imposing a no-contact order on his stand-committed sentence of thirty years to life for attempted murder. The State concedes that the court erred in so doing. See State v. Towle, 167 N.H. 315, 326-28 (2015). Pursuant to RSA 651:2 (Supp. 2018), a trial court cannot impose a no-contact order as part of a sentence of imprisonment. Id. at 328. A court can impose such a condition only on suspended, deferred, or probationary sentences or conditional discharges, where violation of the condition may lead to imposition of the sentence or revocation of probation. See id. at 326-27. Because the trial court did not suspend or defer any part of the attempted murder sentence, or otherwise impose a conditional discharge, we reverse the portion of the attempted murder sentence that imposed the no-contact order. See id. at 327-28. We note, however, that this holding does not prevent those listed in the no-contact order from pursuing alternative remedies to prevent the defendant from contacting them, nor does it address the Department of Corrections' authority to place limitations on the defendant's contact with third persons while he serves his sentence. Id. at 328 n.3.

Affirmed in part and reversed in part.

HICKS, BASSETT, and DONOVAN, JJ., concurred.

11